CLARK WOODMAN

*v.*

JOHN C. HOWELL.

52  367
124  63
45  367
84a 643
45   367
101a ³537

1. TRESPASS—*assault and battery*. There is no rule of law that gives a person, not having a special irrevocable license, the right to enter and continue upon the premises of another when requested to depart.

2. A man has no right to go into or upon the premises of another, even if it be his business office, store, workshop, factory or other place of business, when the owner shall have forbidden him.

3. Where a person enters the premises of another, and is requested to depart, but refuses so to do, the owner may eject him without incurring a liability for trespass, provided he uses no more force than is reasonably necessary for that purpose.

APPEAL from the Circuit Court of Cook county; the Hon. ERASTUS S. WILLIAMS, Judge, presiding.

This was an action of trespass *vi et armis*, brought by the appellee against the appellant, for an assault and battery. The case was tried in the Circuit Court of Cook county, at the October Term, A. D. 1866, and resulted in a verdict in favor of the plaintiff for $300. A motion for a new trial was overruled and judgment rendered upon the verdict. The case was brought to this court by appeal.

The facts in the case are fully stated in the opinion.

Messrs. FULLER & SHEPARD, for the appellant.

Mr. E. W. EVANS, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action of trespass *vi et armis*, for an assault and battery. A trial was had at the October Term, 1866, by the court and a jury, resulting in a verdict of guilty, and the damages were assessed at $300. A motion for a new trial was entered, and was overruled by the court, and judgment rendered on the verdict. The case is brought to this court by appeal to reverse the judgment.

It appears from the evidence, that appellee was employed by several commission merchants to be at the elevator on the arrival of grain consigned to them, to ascertain the inspection fixed on each car load; to take samples, and furnish his employers therewith earlier than such information could be had in the regular course of business. It also appears that appellee got his information in reference to inspection by being present when the inspection was made, or from the inspector's books, who by permission of the owners, left his books, in which inspections were made, in the office in question. And it further appears, that appellee had gone into the office at the time the difficulty occurred, for the purpose of examining the inspector's books as to the character of grain which had arrived, consigned to his employers.

Appellant asked him if he had any business to transact with those having charge of the office. He replied that he did not know that he had. Appellant then told him if he had not he had better leave, as he did not want him there; he ordered him out, and said if he did not go he would put him out. Appellee replied that he did not think he would; that he would go when he was ready. Appellant opened the door, and caught appellee by the collar, and pushed him out. It seems that appellee resisted. Austin swears that appellee caught hold of appellant, and would not let him close the door; that appellant tried to push appellee down the steps, but he held to the railing; that no person connected with that office has any thing to do with the grain, or knows any thing about who owns it; that the inspectors inspect the grain in the yard in the cars, and enter the inspection in their memorandum books; that they were permitted to go into that office as a matter of courtesy, and not as a right, and had no connection with the business of the office. It appears that appellee, since that time, gets the information as usual, without going into the office.

Odell, a member of the firm of Flint, Thompson & Co., testified that appellant was at the time their foreman. That the office where this trouble occurred was theirs; that they had an office at the elevator for the use of the foreman and his clerk, to receive orders drawn on the elevator; that all of their employees had access to it and the right of access; that tally books and shipping receipts are kept there, but nothing relating to the inspection of grain that they had any thing to do with; that they had permitted the board of trade inspectors to use that room, as they might require, to figure up their books, but no other persons were permitted there; that appellee was not an inspector when put out; that Flint, Thompson & Co., had given directions to the foreman to exclude all persons who had no business with the firm, except the inspectors; that these instructions were given before the difficulty occurred.

We are aware of no rule of law that gives any person, not having a special irrevocable license, the right to enter and continue upon the premises of another when requested to depart.

To permit all persons at their mere will to enter and to remain in another's house, or even his close, so long as they may choose, and this too after being requested to depart, would well nigh destroy the dominion of the owner over his property, and would render it almost useless as well as worthless. It would be monstrous to hold that a man's privacy may be so far infringed, that any and all persons may at will enter his dwelling and remain, after being requested to leave, until it suited their convenience to depart. Although it might not be so offensive to permit it on the close of the owner as his dwelling, it would be an outrage upon his rights. Such has never been the law, and so long as there is such a thing as individual ownership of property it is not probable that such will ever be.

We are aware of no rule which authorizes one man to go into or upon the premises of another, even if it be his business office or mercantile house, workshop, factory, or other place of business, when the owner shall have forbidden him. The fact, that he has devoted it to such purposes, does not transfer the title to the public or give others the right to use and occupy it, or deprive him of his control over it. The very fact, that a professional man or a merchant or other person, opens an office to transact business with and for the public, no doubt is a tacit invitation to all persons having business with him, and a permission to others to enter, unless forbidden. But he does not lose his control over it, or the right to prevent whom he pleases to enter, and to require any or all persons to depart, after they have once entered. It is hardly reasonable to suppose, that persons having business with the public, will prohibit persons having business with them from going into their business houses, but if they choose to do so they only exercise a legal right of which they cannot be deprived.

Nor does it make the slightest difference, that appellee entered for the purpose of getting information from the inspector's books, as that officer was there by the courtesy of the proprietors and not as his place of business, but simply to figure up his books, as one of the proprietors testified. Only having such permission he could not authorize others to use, occupy,

or even enter the office; and if he had done so, the proprietors would still have had the right to require them to leave, either in person or through a servant. The inspectors had no right, so far as this evidence shows, to take persons into the office to transact business with them, and, having none, appellee can not justify his remaining therein because he had business to transact with the inspector. And this seems to have been the principal ground upon which the right of recovery is based. Nor do we see, that because it was convenient or even profitable to his employers to have him enter the office to obtain the desired information, he could therefore defy the proprietors and appropriate their office either in whole or in part to that purpose, against the will of those having the possession.

The plea, that appellant was the servant of the owners, and, as such, under their direction requested appellee to leave the office, and, upon his refusal, ejected him, using no more force than was necessary, presented a complete defense. It, in fact, was conceded by appellee, when he filed his replication to the plea. The evidence also shows, that the plea was sustained by the proof. Appellant was authorized and required by his employers to exclude all persons having no business with the firm from the office. Appellee said he had none with them, and was then requested to leave; and when he refused, appellant, as he had a right to do, ejected him, and so far as we can see, employed no unnecessary force, nor do we see that appellee sustained any material injury by the operation. Appellant, when appellee refused to go, had the legal right to use sufficient force to remove him from the premises. Appellee knew that he had obtained no authority from any person capable of granting it to go into or remain in the office, nor does he seem to have questioned appellant's authority from his employers to exclude him from the office; but he seems to have willfully persisted in his wrongful occupancy of the room, as it unquestionably was after being requested to depart.

Nor can it make the slightest difference that it was to the interest of the proprietors that the inspectors should make the entries in their books in the office. Whether it was to their

advantage or disadvantage could not in any degree alter the relations of appellee and the owners of the office.

In any point of view in which we can consider this case, we are unable to see that the evidence warrants a recovery. Had the evidence shown that appellant used more force than was reasonably necessary to eject appellee, then it would be otherwise. In such cases, if the person asserting his rights goes beyond the bounds of reason, and uses more force than is necessary, or inflicts unnecessary injury, he then becomes a trespasser and liable as such. But we fail to discover evidence of such action on the part of appellant in this case.

The judgment of the court below must be reversed and the cause remanded.

*Judgment reversed.*