WILLIAM O. HARRISON v. HENRY C. HARRISON.

*Assault and Battery. Pleadings. Evidence. Damage.*

The owner of a freehold has the right to repel intrusion by necessary force.

The defendant, the minor son of S., was directed by his father to see that no one interfered with an aqueduct upon his father's premises, and, having learned that the plaintiff, with whom his father had had trouble about the aqueduct, was about to interfere with it; went to the boundary of the land where the aqueduct was, and but a few feet from it, and found the plaintiff about to enter upon the land, on his way to the aqueduct. The defendant forbade the plaintiff's entering upon the land, the plaintiff persisted in doing so, and sprang over the fence in a threatening manner. *Held* that defendant might rightfully resist the further approach of the plaintiff, using no unnecessary force.

Where the plea to a declaration for assault and battery is *son assault demesne* and the replication *de injuria*, all the averments of the plea are put in issue; and if the plaintiff made the first assault, he can recover only for the excess of force used in the defense.

When a party is assaulted, the degree of force which he may employ in repelling the assault depends to some extent upon the known character of the assailant—whether peaceable or quarrelsome.

The defendant offered to prove that "plaintiff was reported to be—and was in fact—a quarrelsome man, with a violent and uncontrollable temper; and this was known to the defendant at the time of the affray," which was excluded by the court. *Held* that this evidence should have been received.

TRESPASS for an assault and battery. Plea, the general issue and notice of defence: 1st, *son assault demesne ;* 2d, that assault was made in self-defense, and in the defense of his father's close and an acqueduct therein, by his father's command. Trial by jury, March term, 1870, WHEELER, J., presiding.

The plaintiff's evidence tended to show that for several years he had been interested as an owner in an aqueduct on the land of defendant's father, that on the evening of April 21st, 1869, as he was going on to that land to see about the aqueduct, he found the defendant on the land, near the boundary of it ; that they had some words about the aqueduct, and that the defendant forbade the plaintiff's entering upon the land ; that the plaintiff persisted in going upon the land to the aqueduct, and got over the fence ; that as he got over, the *defendant* struck him several heavy blows, that injured him severely.

The defendant's evidence tended to show that his father and the plaintiff had had trouble about the aqueduct, and that his

· 53

father had forbidden the plaintiff's entering upon his land where it was, and that his father had told him — the defendant — to watch the aqueduct, and see that no one interfered with it; but had given him no directions about keeping any one off from the land. That on the 21st of April, 1869, he was a minor, and was at home in the service of his father, and that the plaintiff knew of these relations. That in the evening of that day he learned that the plaintiff was about to do something to the aqueduct, and *that he went to the fence* at the boundary of the land where the aqueduct was, *and found the plaintiff about to enter upon the land, on his way to the aqueduct; that he forbade* the plaintiff's going upon the land, but that *plaintiff persisted in doing so,* and sprang over the fence and went towards *the defendant* in a threatening manner; that he then struck the plaintiff *several blows,* and that the blows were struck in necessary defense of himself, in *necessary* defense of the land, and in necessary defense of the aqueduct. And that it was about twenty-two and one-half feet from where the plaintiff sprang over the said fence to the said aqueduct.

The defendant offered testimony of Charles Hitchcock, and several other witnesses, to prove that the plaintiff was generally reputed to be, and was, in fact, a quarrelsome man, with a violent and uncontrollable temper, and that this was known to the defendant at the time of the assault. The plaintiff objected to the admission of the testimony, and it was excluded by the court, to which the defendant excepted.

The defendant requested the court to charge :

1. That upon the facts shown, the plaintiff could not object that he did not know that the defendant was acting for his father.

2. That upon the facts shown, the plaintiff is to be presumed to have known that the defendant was acting for his father in defense of the aqueduct.

3. That the defendant was in possession of the land, as against the plaintiff, and that the plaintiff had no right to enter upon the land, with force, against the command of the defendant, and that if he did so, the defendant was justified in opposing force by force to prevent the entry.

4. That if an intruder should commit an assault upon a possessor, the possessor would be justified in wounding the assailant.

5. That upon the facts shown, the defendant had the right to oppose the entry upon the land by the plaintiff, and to use as much force as was necessary to expel him from it, without requesting him to depart from it.

6. That though there must have been no wanton use of violence, or more than necessary force by the defendant, courts and juries cannot be precise in such cases in making precise boundaries and limits of such force.

The court charged the jury that the plaintiff was entitled to recover unless the defendant had made out one or the other of the defenses set forth in his notice. That to sustain the first defense he must have made out that just before he did what he did to the plaintiff, the plaintiff attempted to do violence to him, with the *intention* to harm him, and that the plaintiff had the means there with which to carry the intention into effect ; and that the defendant in what he did to the plaintiff did no more than was necessary to defend himself against the plaintiff. That if it became necessary for him to meet force of the plaintiff, he might meet it with force sufficient to repel it.

That as to second defense, the defendant had failed to show any command by his father to defend the land, and, therefore, so far as defense of land and aqueduct is concerned, it was to be confined to the aqueduct. That the defendant had a right to *defend the aqueduct as against* the plaintiff, but had no right to use violence to the plaintiff, until the plaintiff knew, or had good reason to know, that the defendant was defending the acqueduct for his father ; that if the plaintiff knew this, or had good reason to know it, the defendant was not bound to tell him. That the defendant had no right to use force to protect the aqueduct, till the plaintiff had attempted to interfere with it to do harm to it, and then had no right to use any more force than was reasonably necessary to meet the plaintiff's attempt. That the defendant had *no right* to assault the plaintiff until the plaintiff had gone so far in an *attempt to interfere* with the aqueduct as to make it necessary for him to do so *in order* to protect it from harm; and that then he would have had a right to do only what was reasonably necessary in view of what the plaintiff had then done.

That so far as the plaintiff and defendant were concerned, except as to the defense of the aqueduct, both were rightfully there.

That if the defendant failed to make out (either) of the defenses, ( ? ) he was liable, and the verdict should be for the plaintiff.

That if the defendant was liable, he was liable for all the damage done by him to the plaintiff on that occasion, and the right

of the plaintiff to recover was not limited to the excess, even if the plaintiff did make the first assault.

The court refused to charge as requested, except as the charge detailed complies with the request.

To the refusal to charge as requested, so far as the court did refuse, to the charge as detailed, as to what was a necessary self-defense, and to the charge as to damages, because the liability of the defendant was not confined to damages for excess of force above what was necessary defense, the defendant excepted.

*Dunton & Veazey,* for the defendant.

The testimony of Hitchcock, and others, as to the disposition of the plaintiff, should have been admitted. A person, if assailed by an ugly, desperate man, should be justified in treating him with more severity than a mild inoffensive man. The greatest latitude of proof should be allowed in this class of cases. 1 Hilliard on Torts, 194.

The court should have charged in accordance with the first request. The charge of the court in respect to the defendant's right to defend the aqueduct was too narrow. The defendant was not bound to wait until the plaintiff had done harm to the aqueduct. The defendant had reason to believe, as the case shows, that the plaintiff was about to injure the aqueduct, and in no way could the defendant defend it so effectually as to keep the plaintiff off from the premises, and if the plaintiff made a forcible entry thereon, for the purpose of injuring the aqueduct, the defendant was justified in opposing force by force, to keep the plaintiff off from the premises. 2 A. K. Marshall, 669.

It was error for the court to charge " that so far as the plaintiff and defendant was concerned, except as to defense of acqueduct, both were rightfully upon the premises." The defendant was in the service of his father and had been directed by him to see that the aqueduct received no detriment. This gave him the right to be upon the premises, and to keep off all intruders who came there to injure the aqueduct; while the plaintiff was a trespasser.

The defendant was entitled to a compliance with the sixth request. *Yale* v. *Seely,* 15 Vt., 221.

The charge as to damages was erroneous in another respect. If the plaintiff attacked the defendant, as the evidence tended to show, the defendant was justified in defending himself, and would be liable only for the excess of injury inflicted by him upon the plaintiff, above what was necessary for self-defense. *Yale* v. *Seely, supra; Dole* v. *Erskine,* 35 N. H., 503; 1 Hilliard on Torts, 188; *Devine* v. *Rand,* 38 Vt., 621.

*Edgerton & Nicholson* and *C. H. Joyce,* for the plaintiff.

The testimony offered to prove the general disposition and temper of the plaintiff was properly excluded. The right of personal security against lawless violence does not and cannot be made to depend upon mere amiability of disposition on the part of the party assailed.

The first and second requests made by defendant of the court, to charge the jury, were wholly inadmissible. The exceptions show that the defendant's father had instructed defendant to watch the aqueduct, and see that no one interfered with it; but they fail to show that the plaintiff had any knowledge of said instructions. Hence it would have been error had the court charged as requested, " that the plaintiff could not object that he did not know that the defendant was acting for his father."

The fourth request is in terms too general and vague. If a " possessor " is justified in all cases in wounding an assailant, to what extent may he wound him, and what would be the limit of the force that he may rightfully use ?

Under the plea of *son assault demesne,* it is incumbent upon the defendant to prove that the plaintiff *made the first assault;* and lest the jury might misapprehend the force of this simple legal proposition, the court took occasion to explain the rule with very great particularity.

The rule of law, as explained by the court, is so full, complete, and withal reasonable, as to disarm exception. And under this charge, the jury must have found either that the plaintiff did not attempt to do violence to the defendant with the intention to harm him, or that the defendant did more than was necessary in self-de-

fense.   Upon whichever alternative the jury based their verdict, it is equally conclusive against the defendant.

The third and fifth requests are fully met and answered by the charge of the court, under the second branch of the defense.  This part of the charge is quite as favorable to defendant as he had the right to ask.   And under it the jury must have found that no sufficient justification had been shown for the assault.   Hilliard on Torts, 202, 214.

The court further instructed the jury that if defendant failed to make out either of the defenses set forth in his notice, he was liable for all the damage done by him to plaintiff on this occassion.   Whatever may be the rule of damages as applied to a case where the plaintiff was himself the aggressor and where his claim to recover is based upon excess of force, we insist that there are no facts in this case to justify any such rule of limitation of damages.

The opinion of the court was delivered by

REDFIELD, J.   The case shows that the defendant's father was the owner of the freehold on which was situate the aqueduct. The father " had forbidden the plaintiff's entering on the land where it was," and '· had directed the defendant to watch the aqueduct and see that no one interfered with it."   The defendant was a minor son, in the service of his father, on the premises. The defendant went to the boundary of the land where the aqueduct was, and found the plaintiff about to enter upon the land, on his way to the aqueduct, and about 22½ feet from it.   Defendant forbid the plaintiff's going upon the land, but he persisted and sprang over the fence, and approached the defendant in a threatening manner, and the defendant thereupon struck him several blows, which he claimed were " in necessary defense of himself, the land, and the aqueduct."   The court charged the jury that " the defendant had no right to use force to protect the aqueduct till the plaintiff had attempted to interfere with it to do harm to it ;" " that except as to the aqueduct both were rightfully there."

If the plaintiff had no right to interfere with the aqueduct, we are unable to discover how he could be rightfully on the prem-

ises, making his way towards the aqueduct, forcibly and against the warning and protest of the defendant. The defendant, in the defense of the aqueduct, was in the right. The plaintiff, persisting in his approach to the aqueduct, against the will of the defendant, was wholly in the wrong. The relative position of the parties is important in determining their rights.

The defendant, in his defense of the aqueduct, was not bound to wait until the plaintiff had reached it and was in the act of dealing a destructive blow. He could rightfully defend the approaches and outposts. If the plaintiff was within a few feet of the aqueduct, and " on his way to it," the defendant, after warning him to desist, might as well resist his further approach, as to wait until injury or destruction became more imminent. If a servant be directed to defend a house or barn, he is not necessarily confined to the lintel of the door, but may resist the intruder in his approach,—in the yard, or at the gate. It would be too narrow to strip him of his justification because his resistance, otherwise justifiable, was made a few feet from the door. So in this case, if the plaintiff forcibly persisted in going to the aqueduct after he was forbidden to do so, the defendant might rightfully resist his further approach, using no unnecessary force. And in the charge of the court, in this respect, there was error.

II. The court charged the jury that the " plaintiff was not limited to the excess even if the plaintiff did make the first assault." We think this was error. The rule has been well settled in this state, though otherwise in the English practice, that when *de injuria* is replied to the plea of *son assault demesne,* all the substantial averments of the plea are put in issue ; as well whether more than necessary force was used in repelling the assault, as who made the first assault ; and if the plaintiff is shown to have made the first assault, he can recover only for the excess of force used in the defense. *Elliott* v. *Kilborn,* 2 Vt., 470 ; *Yale* v. *Seely,* 15 do., 221 ; *Devine* v. *Rand,* 38 do., 621. See also *Dole* v. *Erskine,* 35 N. H., 503.

We think this rule well founded in reason, and that the practice in England, requiring the plaintiff to *new assign* if he would go for the excess, is too artificial, and needless ; for the plea

avers that the defendant " used no unnecessary force," which the replication denies and puts in issue, and there would seem no reason that the pleadings be further prolonged.

III. The defendant offered to prove that " plaintiff was reputed to be, and was in fact, a quarrelsome man, with a violent and uncontrollable temper, and this was known to the defendant at the time ;". which was excluded by the court. The defendant must be judged, and justified or condemned, in the light of the circumstances that surrounded him ; not by the secret *motive* or *intent* of the plaintiff, but by the *apparent* purpose ; not by the *actual*, but *apparent* danger. If a man presents a pistol to another and threatens his life, the assailed party is not required to wait till he is dead, to test the certainty that the man intended to kill him, but he would be justified in disabling his assailant at once, though it should finally prove that the pistol was unloaded and murder not intended. So if the assailant is known to the assailed to be a practised pugilist and a man of violence, the kind and degree of resistance must be measured, or at least modified, by the apparent danger with which the party is threatened. And we think that, when the " plaintiff sprang over the fence and went toward the defendant in a threatening manner," the degree of force, whether it be reasonable or unreasonable, which defendant might employ, would depend measurably upon the known character, in that respect, of the plaintiff; whether he be a " man of war from his youth," or of peace ; whether he had the temper, the will and ability, to inflict sudden and great bodily injury, and the danger was imminent, or whether he be known to the defendant as a man of mild temper and a stranger to violence. We think the evidence should have been received, and that the *apparent* danger which threatened the defendant would be somewhat affected by it, and the degree of force which defendant might lawfully use should be measured or modified by it.

The judgment of the county court is reversed, and the cause remanded.