## MAIER B. BREITENBACH v. FRANK C. TROWBRIDGE.

*Assault and battery—Civil action—Ejection of person from business office—Evidence of malice—Admissions on criminal trial—Statements of agent—Right of person to control private business.*

1. A person has the right, unless forbidden, to enter the *public* office of another for the purpose of transacting business with the owner, who has the right to refuse to transact any business with him, and to order him from the office, and, in case of his refusal to go, to eject him in a *reasonable* manner, and with *sufficient* force to meet any resistance offered.

2. A person has the right to control his private business, and may select such persons as he chooses with whom to transact it. He can prevent whom he pleases from entering his office, and, when a person has entered, may request him to depart, and he has no legal right thereafter to remain.

3. The private office or business place of a citizen, though open to the public for the transaction of his business with them, cannot be made, against his will, free to *all* to enter and remain upon proper business, like a hotel, public office, railroad car, or depot. He can admit or eject whom he pleases. It is his own business, and the public have no rights therein against his wishes. *Woodman v. Howell,* 45 Ill. 367, 370; *Bogert v. Haight,* 20 Barb. 251.

4. Where a person has been forbidden by the proprietor to enter his office, he is a trespasser if he persists in so doing.

5. On the trial of a civil suit for damages for an assault and battery, testimony was admitted of a conversation had by the defendant with the police justice before whom he was tried on the same charge.

    *Held,* that it was proper to prove all that the defendant said by way of *admissions,* but that what the justice said to him was incompetent.

6. Where in a suit to recover damages for being ejected from the office of the defendant, where the plaintiff went to tender money due on a land contract, evidence was received of a prior offer of the money to an agent of the defendant, who refused to accept it, and sent plaintiff to the defendant,—

    *Held,* a legitimate part of the transaction, and that the statements of the agent were properly received.

7. Where on the trial of a civil suit for an assault and battery evidence was received of defendant's calling the plaintiff a " d——d police-court shyster," on the occasion of his trial on a criminal charge growing out of the same transaction,—

   *Held*, admissible, as showing the *animus* of defendant towards plaintiff, and therefore having a bearing upon his *credibility* as a witness.

   *Held*, further, that such testimony was incompetent to show *malice* at time of the assault, and therefore tending to show the use of more force than was necessary in ejecting plaintiff from defendant's office, which was the assault complained of.

Error to Wayne. (Jennison, J.) Argued November 12, 1886. Decided January 20, 1887.

Trespass. Defendant brings error. Reversed. The facts are stated in the opinion.

*George W. Radford*, for appellant.

*B. T. Prentis*, for plaintiff.

MORSE, J. Plaintiff sued defendant in the Wayne circuit court in an action of trespass for an assault and battery, and recovered a judgment for $300 upon the verdict of a jury for that sum. The defendant brings the case to this Court, and assigns various errors in the proceedings in the court below.

The assault took place in the business office of the defendant, where the plaintiff had gone to pay or tender to defendant the interest then due on a land contract. The plaintiff was accompanied by one Mullenhagen, and there was also present one Schmiel, a clerk in the office of defendant.

The evidence upon the trial was conflicting. The testimony on the part of the plaintiff was to the effect that he, as counsel for Mullenhagen, went with the latter to the office of the defendant on the third day of November, 1885, about 10 o'clock in the forenoon. He directed Mullenhagen to pay Trowbridge $21 on his contract, and Mullenhagen commenced counting out the money. Trowbridge said he would

not take the money; it must be paid to his attorney, Mr. Radford. Plaintiff then said to Mullenhagen, "Let's go." While plaintiff was going out, with his face to the door, Trowbridge jumped at him from behind, took him by the collar, put his fist in plaintiff's back, and pushed him into the middle of the street. He was not in the office over two minutes.

On plaintiff's way out, and before the assault, he admits he heard the defendant halloo, "I want you to get out of my office," but at the time claims he was going as fast as he could. The humiliation of plaintiff, who is an attorney at law, was so great on account of this assault that he "felt sick and mean," owing to the "suffering and mortification" he endured. He had never been struck before, and never struck any one in his life.

The defendant claimed that he had before that time become displeased with the conduct of plaintiff in a garnishee case, where he thought plaintiff undertook to "beat" him, and then told him that he wanted no more to do with him; that he did not want him in his office, and, if plaintiff had any business with him of any kind thereafter, he must go to defendant's attorney, Radford; "didn't want anything to do with him at all."

On the day of the assault he claims that he repeatedly told plaintiff to go to his attorney, as he would not receive the money. Finally plaintiff said, " We are going to make you take it," and told Mullenhagen to lay the money down, which the latter did upon a small counter in the office. Defendant said : " There is no use of laying it there; I will not take the money up." Mullenhagen took it up, and plaintiff ordered him to put it down again.

" And they laid it down again, and kept worrying me in that way; and finally I told them to get out, and Mr. Breitenbach said he would not go out until he had his business done. I told him his business was done with me, and to get out, and he didn't make any move to go. I slipped down off the

stool behind the counter, and walked to the door, and told him to get out. I opened the door, and told him to go. He didn't make any particular haste to get out, and I took him by the collar, and by the slack of the overcoat in the back, and pushed him outside the door."

It appears without dispute that, previous to this meeting at defendant's office, the plaintiff and Mullenhagen had been to Radford to pay this money, but he refused to take it, and sent them to defendant. Plaintiff so informed defendant at the time of the trouble, and defendant replied:

"Do you suppose, after you have been to see Radford, and he will not take the money, that I will?"

Under the two conflicting claims as to what took place before the assault, we think the court erred in instructing the jury that—

"The plaintiff had the right to go to the office and do his business, and remain there until his business was done."

He further said, in the same direction:

"Now, gentlemen, if you believe that Mr. Breitenbach had completed his business there, he had no right to remain there any longer than was necessary to transact his lawful business, because that is the only right he had there, unless he was invited to remain. Defendant then had the right, *after his business was through*, to say to him that he did not wish him there, and to leave."

It does not seem to be claimed that any more force was used in pushing him than was necessary, if defendant's statement of plaintiff's refusal to go was true.

If plaintiff's story was true, he was going out of the office as fast as he could before he was ordered to do so, and the assault was unprovoked. Under his own theory, he had completed all he intended to do there, and was on his way out, of his own accord, before the assault. There was no need of any charge of this kind to support his theory, and it could not be applied to the facts as testified to in his behalf. It could only apply to the facts as stated by the defendant, and, so applied, it was wrong and misleading.

The plaintiff had a right to go into the office of the defendant, and, in a respectful way, make his tender; but after he had made it, and it had been refused, he had no further business there. He had no right to "make" defendant take the money; and when he was ordered to go out of the office, and refused to go, the defendant was justified in ejecting him, if he used no more force than was necessary. He could not, upon the plea that his business was not completed, remain and annoy the defendant. He could not help his right to be there by saying that he would not go out until his business was done.

He had a license to enter the office of defendant, not being a private place, for the purposes of transacting his business with the defendant. Yet the defendant had a right, if he saw fit, not to do any business with him, and to order him from the office, which belonged to the defendant, and was only public for the purposes of transacting his own business. If the plaintiff did not go in a reasonable time, or refused to go, insisting upon remaining and transacting business with the defendant against his expressed will, the defendant was authorized, as before said, to eject him in a reasonable manner, and with sufficient force to meet any resistance offered. The license to enter, implied by the opening of defendant's office to the public to transact business with him, was revoked at the instant when the defendant said to plaintiff that he would not receive the money, and ordered him to leave the office. *Woodman v. Howell*, 45 Ill. 367; *Jones v. Jones*, 71 Id. 562; *Wood v. Leadbitter*, 13 Mees. & W. 838; *McCrea v. Marsh*, 12 Gray, 211; *Ayres v. Birtch*, 35 Mich. 501.

A person has the right, in his private business, to control it, and may select such persons as he chooses with whom to transact such business. He can prevent whom he pleases from entering his office; and when a person, under the implied license, has entered, he has a right to request such person to depart, who thereafter has no legal right to remain.

A person in such business has the choosing of his custom-
ers, and his private office or business place, though open to
the public for the transaction of his business with them,
cannot be made, against his will, free to all to enter and
remain upon proper business, like a hotel, public office, rail-
road car, or depot.   He can admit or reject whom he pleases.
It is his own business, and the public have no rights therein
against his wishes.   *Woodman v. Howell*, 45 Ill. 367, 370;
*Bogert v. Haight*, 20 Barb. 251.

In this case, if the defendant's testimony was true, he had
before this forbidden the plaintiff to come into his office, and
he was therefore, in such case, a trespasser when he went in.
It was not necessary, for the purposes of a tender by Mullen-
hagen, that plaintiff should force himself into the office of
defendant; nor, after the money had once been laid down
upon the counter and refused, that the same process should
be gone over again.   The case stood like this:   If the story
of the plaintiff was believed by the jury, the defendant com-
mitted an unjustifiable assault, and was liable in damages;
on the other hand, if they gave credence to defendant's testi-
mony, he did no more than he had a right to do, and was en-
titled to a verdict.

The charge as given could have no other effect than to
mislead the jury, and was wrong in the abstract, as well as in
its application to the facts in the case at bar.

The court also erred in permitting testimony to be given in
relation to what took place in Justice Miner's court upon the
trial there of a criminal action growing out of the same trans-
action.   It was proper to give all that the defendant said
there by the way of admission, but what Justice Miner said
to him was incompetent, and had a manifest tendency to
prejulice the jury.

There was no error in permitting plaintiff and Mullenhagen
to testify that, before calling at defendant's office, they had
been to Radford, his attorney, and offered him the money,

and that Radford refused the same, and sent them to defendant. It was a legitimate part of the transaction; and, Radford being the admitted agent of defendant in the matter of this land contract, his statements to them were properly received.

Defendant was asked on cross-examination if, on coming out of the police court after the trial there, he did not call the plaintiff a "d——d police-court shyster." This was objected to as incompetent and immaterial, but the court permitted the question to be answered. This evidence would be admissible, I think, for the purpose of showing the bias and *animus* of the defendant towards the plaintiff, and therefore having a bearing upon his credibility as a witness. But plaintiff's counsel claims it was competent for the purpose of showing malice at the time of the assault, and therefore having a tendency to show that he used more force than was necessary to eject plaintiff from his office. I do not think it could be used for that purpose. It would not be fair to the defendant to use this remark, made in the heat and passion following his arrest and trial in the police court, for the purpose of showing or inferring malice and ill will at the time of the assault.

The judgment is reversed, with costs, and a new trial granted.

The other Justices concurred.