# CHARLESTON.

## STATE v. FLANAGAN.

Submitted September 14, 1915.   Decided October 19, 1915.

1. ASSAULT AND BATTERY—*Expelling Trespasser—Unreasonable Force.*
    A proprietor may order a trespasser off his premises and, if he refuses to go, may use such reasonable force as may be necessary to expel him.   But if he exceeds the bounds of reasonable force he is guilty of an assault.   (p. 786).

2. SAME—*Elements of Offense—Ejection of Intruder.*
    The right to eject an intruder is not limited to one's dwelling house, but applies to any property of which he has lawful possession. (p. 787).

Error to Circuit Court, Doddridge County.

Walter N. Flanagan was convicted of assault and battery, and brings error.

*Reversed and remanded.*

*M. K. Duty* and *R. S. Blair,* for plaintiff in error.

*A. A. Lilly,* Attorney General, and *John B. Morrison* and *J. E. Brown,* Assistant Attorneys General, for the State.

WILLIAMS, JUDGE:

Defendant was indicted for a felonious assault upon Sylvester B. Waldo and was found guilty of simple assault and battery, fined $100 and sentenced to thirty days in jail; and he brings error.

Hearing some shots fired in his woodland and suspecting that someone was hunting on his land, defendant called his nephew, Frank Flanagan, a boy fourteen years of age, and they went into the woods in search of the trespasser. Defendant went by one route and sent the boy by another. Presently defendant came in sight of the prosecuting witness, Waldo, who was carrying a gun. When he came within about twenty yards of Waldo, according to his own testimony, he called to him and asked him who had given him permission to hunt there, and Waldo replied, "I didn't know you didn't want me to hunt in here." A quarrel ensued, and defendant says Waldo cursed him, called him a liar, and grabbed his gun by

the muzzle and walked up to him; that he then called to his nephew to come there, and when the boy came, he said to Waldo, ''Now, you get out of here,'' and that Waldo ''swore he would not get out until he got damned good ready;'' that he then put his hand against Waldo who grabbed the gun with both hands and shoved it up in his face; that he likewise took hold of the gun with both hands and a tussle ensued between them, he trying to wrest the gun from Waldo, and Waldo using all his force to retain possession of it; that in the scuffle over the gun Waldo cocked it and was trying to point it toward his stomach and he called the boy to get a club and hit him over the head, and that Waldo told the boy not to do that. Continuing, defendant says: ''Some how I throwed the gun up and I struck him by the side of the head with my fist and knocked him back probably ten feet and he fell down and he was kind of kicking as I rushed up to him and he throwed the gun right over towards me and I told the boy to hit him, and the boy hit him across the forehead and kind of knocked him back, and he was raising with the gun again and I got the club and hit him over the arms or over the head, I don't know which, and in the tussle I got hold of the gun, dropped my club and got him down and I pulled the gun off, and he said, 'My God, boys, don't kill me, I will get out,' and I jerked the gun from him and he got up and said, 'Which way do you want me to go,' and I told him 'The quickest way you can get out of here.' He said, 'Give me the gun and I will go,' and I said 'No, I will take care of the gun,' and he started off, and I grabbed up the club in my left hand and had the gun in my right hand, and I told him to go, and he went out the way he said he came in.''

The boy, Frank Flanagan, corroborates his uncle's statements. He says defendant put his hand on Waldo's shoulders and told him to go out; that Waldo said he was not going until he got ready, and turned around as if to hit his uncle with the gun, and his uncle grabbed it; that each was trying to get it out of the other hands, and in the scuffle his uncle struck Waldo on the head and knocked him down; that when he started to get up he (witness) hit him across the forehead with a stick; that he tried to get up again and his uncle grabbed the stick out of his hand and hit him again.

Defendant's evidence, on the material points, conflicts with that of the prosecuting witness, who says he was not hunting on defendant's land but was passing through on a near way home, and was approached by defendant and his nephew, one on each side of him; that he told defendant he would get off his land that he did not know he objected to his passing over it, but that defendant would not permit him to go; that he sprang at him and grabbed his gun, and he then took hold of it with both hands and tried to keep him from taking it away from him; that in the scuffle over the gun defendant fired the load out of it, and then called the boy to hit him; that he was struck and knocked down; that he had made no attempt or threat to use his gun on defendant; that when he was struck he was knocked down and became unconscious; that when he regained consciousness defendant was standing over him with a club, and he heard the boy say, ''For God sake don't kill him,'' and that he was struck several times with the club while he was down. That he was badly cut about the head and arms, is proven by the testimony of both himself and the doctor who dressed his wounds, and is not denied.

Defendant's counsel do not contend that the verdict is not supported by the evidence, but they complain of the action of the court in giving certain instructions on behalf of the state and refusing to give certain others asked for by defendant. The giving of the state's No. 1 is assigned as error. It reads as follows:

''There is no law to justify the proposition that a man may be the assailant, the aggressor, and bring on a fight, and then claim exemption from the consequences thereof, on the ground of self-defense; he cannot so act and then shield himself on the assumption that he was defending himself. And you are instructed that if you believe from all of the evidence beyond a reasonable doubt the defendant herein was the aggressor, that he provoked the difficulty, and made the assault testified to in this case, that before he can avail himself of self defense it must appear that he withdrew from the assault in good faith and clearly announced a desire for peace. And you are instructed that the burden of showing that he did retreat and announce a desire for peace after the trouble began, he must prove such defense by a preponderance of the

evidence. And that the jury should consider all of the evidence introduced by the state and the defendant· in ascertaining whether there is such preponderance.''

It is admitted that this instruction correctly states the law, but counsel insist that it is not applicable to the facts, and is confusing and misleading. If the testimony of the prosecuting witness is true, it proves that he did not refuse to go off defendant's land but that he was willing to go, and was prevented by defendant, who assaulted him and wounded him without cause. A trespasser, who is willing to depart peaceably, is not denied the right of self defense when unlawfully assaulted by the proprietor of the premises. If the prosecuting witness' testimony is true, defendant's assault upon him was unlawful. The instruction is framed on his theory of the case and properly states the law.

The state's no. 3, complained of, is as follows:

''A land owner may order a mere trespasser walking across his land off, and, if he refuse to go, he must resort to his legal remedy to expel him, and he has no right to commit a breach of the peace in trying to expell him. And if he assault the trespasser the latter may defend himself so far as is necessary to prevent bodily harm. And you are instructed that trespass against property of another, not his dwelling house, is not sufficient provocation to warrant the owner in using a deadly weapon in its defense.''

The first part of this instruction misstates the law. A proprietor may order a trespasser off his land, and if he refuses to go he may use such force, and only such force, as is reasonably necessary to expel him. If he exceeds this he becomes a wrong doer himself. The law gives him no right to punish the trespasser, and if he strike and wound him when it is not necessary to do so in order to expel him from the premises, or to protect himself against bodily harm from the trespasser, he does an unlawful act.

''If one intrudes himself upon premises where he has no right to be, then the owner may order him away; and, if he refuses to go, then he may use such force as may be reasonably necessary to expel the intruder.'' *Canfield* v. *Chicago &c. Ry. Co.*, 59 Mo. App. 354. To the same effect are the following decisions: *The State* v. *Martin,* 52 Mo. App. 609;

*Illinois Steel Co.* v. *Novak,* 84 Ill. App. 641; *Brebach* v. *Johnson,* 62 Ill. App. 131; *Townsend* v. *Briggs,* 99 Cal. 481; *Slingerland* v. *Gillespie,* 70 N. J. L. 720; *Carter* v. *Sutherland,* 52 Mich. 597; *Breitenbach* v. *Trowbridge,* 64 Mich. 393; *Drew* v. *Comstock,* 57 Mich. 176; *Harrison* v. *Harrison,* 43 Vt. 417; 1 Cooley on Torts, (3rd ed.), 291; and 1 Kinkead on Torts, Sec. 210.

''One who has commanded an intruder to leave his premises is authorized to use such means as may be reasonably necessary to enforce his command. But if in so doing he exceed the bounds of reasonable force he will be guilty of an assault.'' *Karshman* v. *Rose,* 50 Neb. 113.

Defendant admits he put his hand on Waldo's shoulder with a view of pushing him off or leading him off his land. This he had a right to do, if he refused to go when bidden; and, if Waldo offered resistance, defendant had a right to use enough force to overcome that resistance, but no more. The right to expel a trespasser, using no more force than is reasonably necessary therefor, is not limited to one's dwelling house, but applies to any property of which he has lawful possession. Hence, the giving of the state's instruction No. 8 was erroneous.

Defendant's No. 6 was properly refused, because it is misleading in that it fails to qualify defendant's right to eject Waldo, by stating that he should use only such force as is necessary for that purpose. If Waldo was willing to go he had no right to assault him. It is also objectionable because it does not state the cause for defendant's believing that he was in danger of losing his life or of suffering great bodily harm at the hands of the prosecuting witness was a reasonable cause. It must be such as will satisfy the mind of a reasonable man that he is in danger of death or bodily harm, in order to justify the use of a deadly weapon in self defense.

Defendant's No. 7 is erroneous, in that it assumes that defendant employed the weapon with which the injury to the prosecuting witness was inflicted, only in defending himself, whereas there is evidence tending to show that he continued to strike him with the stick after he had been knocked down and was not in condition to injure him. If he did so punish him unnecessarily, he became a wrongdoer and is guilty of

assault and battery. The instruction, because of not submitting to the consideration of the jury this element of the case, and being in form binding, was properly rejected.

Defendant's No. 9 was properly refused because, being a binding instruction, it does not submit to the jury all the material facts. Moreover, it assumes that defendant was endeavoring to prevent a trespass upon his land, whereas the trespass had already been committed when the prosecuting witness was discovered on defendant's land. Even though Waldo was a trespasser, defendant would have no right to assault him, simply to prevent further trespass, and thereby cause prosecuting witness to offer resistance in self defense, and then claim the right to use a deadly weapon in his own defense. If Waldo was willing to go off the land, defendant would have no right to punish him because he found him on it, and if he attempted to do so Waldo had a right to defend himself against bodily harm. But, if he was ordered off and refused to go, and defendant then undertook to put him off, using no more force than was reasonably necessary for that purpose, Waldo would have no right to resist. The right to eject a trespasser gives the proprietor no right to inflict unnecessary punishment.

The judgment will be reversed, the verdict set aside and the case remanded for a new trial.

*Reversed and remanded.*