FLANIGAN v. CHASE.

1. APPEAL AND ERROR—QUESTIONS REVIEWABLE—AUCTIONS—PUBLIC UTILITIES.

Claim that defendant company, engaged in livestock auction sales, was a public utility and subject to regulation affecting such public utilities, not having been mentioned in the pleadings or proceedings before the trial court, is not considered on appeal of plaintiff who had been excluded from the company's premises during one of its auctions.

2. AUCTIONS AND AUCTIONEERS—EXCLUSION FROM SALES.

A private company engaged in holding auction sales has the right to control and regulate its own business and to exclude from its sales anyone who is objectionable.

3. SAME—EJECTION OF UNWELCOME PERSONS AT SALE.

Private company, engaged in conducting auction sales, was justified in requesting plaintiff, a rival company's employee, to leave where plaintiff had previously issued thousands of dollars of worthless checks, had been advised shortly theretofore not to attend, and his presence and action there were preventing the bidding from proceeding; and upon his failure to leave, the company had the right to use such force as was necessary to eject him.

4. LICENSES—PRIVATE BUSINESS—CONTROL OF PREMISES.

A person has the right, in his private business, to control it, may select such persons as he chooses with whom to transact such business and prevent whom he pleases from entering or remaining upon his premises, and one who had been theretofore forbidden to come thereupon would be a trespasser when he went in.

5. FALSE IMPRISONMENT — CONSPIRACY — EVIDENCE — AUCTION — FORCIBLE EJECTION.

In action for false arrest and conspiracy to ruin plaintiff's reputation, business, and good will, employee, manager and company conducting auction sales of livestock were not liable where

evidence shows that plaintiff had been repeatedly advised not to attend as he was considered an undesirable bidder since he had issued thousands of dollars of worthless checks, and that he made a deposit under another's name of more than he made bids for, was quietly requested to leave and upon failure to do so, defendant employee, who was also a deputy sheriff, conducted him off the premises, using no more force than was necessary to do so, and record is without evidence of conspiracy.

Appeal from Shiawassee; Collins (Joseph H.), J. Submitted October 4, 1939. (Docket No. 29, Calendar No. 40,636.) Decided December 19, 1939.

Case by Joseph Flanigan against Ernest Chase, George Carruthers, and Owosso Livestock Sales Company, a Michigan corporation, for damages for alleged false arrest and conspiracy to destroy business. Directed verdict and judgment for defendants. Plaintiff appeals. Affirmed.

*Hugh K. Davidson,* for plaintiff.

*Hicks & Des Jardins,* for defendants.

McAllister, J. Plaintiff is a livestock dealer in Shiawassee county. Defendant Owosso Livestock Sales Company is a corporation engaged in livestock auction sales in the same county, with premises consisting of approximately two acres of land, occupied by a building with stockyard surrounding it. In the building are seats adjoining a ring where farmers in the community and other dealers bring in their stock for exhibition and auction. The defendant company receives a commission on all sales. Defendant Carruthers is manager of the company; defendant Chase is an employee, as well as a deputy sheriff.

Plaintiff, Flanigan, had been employed by a rival livestock company which had its place of business

across the road from defendants' premises, and, in addition to being employed by the company, he appears to have been engaged in its financial management. During a period of some years before 1936, Flanigan, as a buyer, had on numerous occasions given checks in payment of livestock at auction sales which were returned by the banks as worthless because of insufficient funds. These checks had on occasion been given by him personally, and at other times, as a representative of the rival livestock company. On one of these occasions he had been confined to jail for more than a month, and at the date of the transaction out of which this suit arises, farmers in the vicinity had suffered a loss of approximately $9,000 because of such worthless checks.

On March 5, 1936, the defendant company was conducting an auction sale. Prior to the sale, plaintiff saw defendant Carruthers, the manager of the Owosso Livestock Sales Company, and was advised by Carruthers that he did not want plaintiff to come to the sale. Plaintiff admitted to Carruthers that he had four worthless outstanding checks, totaling $8,000, and claimed they had not been paid because of the fault of someone else. Carruthers, however, felt that plaintiff was an undesirable buyer and that plaintiff's appearance and bidding would have a bad effect upon the farmers and others offering livestock for sale. He, therefore, definitely told plaintiff to stay away and that they did not want him present. Flanigan, however, replied that he was going to buy calves there that day regardless of what trouble he had, and thereafter went to the premises of defendant company. Prior to the sale he was called to the office by Carruthers, and was told that he could not buy there that afternoon; that they did not want him there; and that he was not to step into the ring and buy stock under any consid-

eration. Flanigan left the premises, sought legal advice, and returned. Thereafter, he appeared at the sale and deposited $1,000 in the name of K. Shapiro for bidding purposes. As the sale proceeded, Flanigan commenced to buy, and purchased certain calves, as highest bidder, for a total of $694.72, leaving a balance of $305.28 still available for further purchases. After Flanigan had bid on the calves, Carruthers came into the ring and had a talk with the auctioneer, and thereafter defendant Chase came into the ring and told plaintiff in a quiet manner that his orders were to ask him to leave. Plaintiff answered that he felt that he had a right to stay, and thereupon turned around to the other buyers in the vicinity of the ring, and in a loud voice stated that his money was on deposit and that he had a right to bid. He continued to shout that it was a "closed sale" and that they could not put him out. His action was preventing the bidding from proceeding, and at that point, defendant Chase took him by the arm and started to walk out of the building with him. When they had proceeded out of the premises, Chase told plaintiff not to come back on the grounds. As a result of these incidents, plaintiff brought suit against defendant company, Carruthers, and Chase, claiming damages for false arrest and conspiracy to ruin his reputation, business, and good will. The trial court directed a verdict of no cause of action, and plaintiff appeals.

It is contended by plaintiff that because defendant company was a public utility, he was, therefore, excluded from a public sale without right or justification. A considerable portion of the plaintiff's brief is devoted to a discussion of this contention, and numerous Federal statutes regulating stock markets are cited; but this claim does not appear in the pleadings, nor in the proceedings before the trial

court. No mention is made of any claim that defendant company was a public utility, or engaged in a business which rendered it subject to regulation affecting such public utilities. Upon this record, therefore, such contention is ill-founded and can receive no consideration in our determination. Defendant corporation was a private company, engaged in holding auction sales. It had the right to control and regulate its own business and to exclude anyone who was objectionable. It further was justified in requesting plaintiff to leave, and upon his failure to comply, had the right to use such force as was necessary to eject him.

In *Breitenbach* v. *Trowbridge,* 64 Mich. 393 (8 Am. St. Rep. 829), it was said:

"A person has the right, in his private business, to control it, and may select such persons as he chooses with whom to transact such business. He can prevent whom he pleases from entering his office; and when a person, under the implied license, has entered, he has a right to request such person to depart, who thereafter has no legal right to remain.

"A person in such business has the choosing of his customers, and his private office or business place, though open to the public for the transaction of his business with them, cannot be made against his will, free to all to enter and remain upon proper business, like a hotel, public office, railroad car, or depot. He can admit or reject whom he pleases. It is his own business, and the public have no rights therein against his wishes. *Woodman* v. *Howell,* 45 Ill. 367, 370 (92 Am. Dec. 221); *Bogert* v. *Haight,* 20 Barb. (N. Y.) 251.

"In this case, if the defendant's testimony was true, he had before this forbidden the plaintiff to come into his office, and he was therefore, in such case, a trespasser when he went in."

See, also, *Cole* v. *Rowen,* 88 Mich. 219 (13 L. R. A. 848); *Meisner* v. *Detroit, Belle Isle, & Windsor Ferry Co.,* 154 Mich. 545 (19 L. R. A. [N. S.] 872, 12 Am. St. Rep. 493).

With regard to the claim of false arrest, it appears from the plaintiff's own testimony that defendant Chase only took him by the arm and conducted him off the premises, using no more force than was necessary to carry out this purpose. There was no evidence of any conspiracy against plaintiff. He had been repeatedly told that defendant company did not want him to attend the sale and that under no circumstances was he to bid. The reasons for this attitude are obvious. Having issued thousands of dollars of worthless checks, plaintiff's bidding might easily have resulted in various stock owners' refusing to allow their livestock to be sold because of the fear that they might find themselves in the same position as many other farmers who had sold property to plaintiff for worthless checks. Defendants were justified in the course of action they pursued.

Judgment affirmed, with costs to defendants.

BUTZEL, C. J., and BUSHNELL, SHARPE, POTTER, CHANDLER and NORTH, JJ., concurred with McALLISTER, J.

WIEST, J., concurred in the result.