## JOSEPH L. MAY v. WESTERN UNION TELEGRAPH COMPANY.

### (Filed 6 December, 1911.)

1. Trespass—Rightful Entry—Unlawful Acts.

A lawful right of entry upon the lands of another will not justify its being done in a violent and insulting manner, regardless of the rights of the owner in his occupancy.

2. Same—Consequences of Acts—Knowledge—Direct Consequences —Measure of Damages.

The employees of a telegraph company entering upon the right of way of a railroad company in the construction or maintenance of its telegraph line, within the scope of their agency and in furtherance of the business of the telegraph company, may bind the company in damages to the owner by the violence of their entry, and the use of boisterous and profane language, the singing of lewd songs, and by the entrance into his dwelling and by acting in such a way as to cause injury to his wife from apprehension and mental shock; and evidence that she was in a delicate condition at the time, which aggravated the damage or rendered her more susceptible to the shock from the conduct described, may be considered by the jury in their award upon the issue as to the measure of damages, though the employees may not have been aware of it at the time complained of, when the tortious acts were the immediate, natural, and proximate cause of her injuries.

3. Same—Torts.

When the tortious acts of the employees of a telegraph company, after rightfully entering on the lands of the owner, cause injury to the wife of the owner, it is not necessary that they should have contemplated the particular injury which their wrongful act produced, but the company is liable if the wrong was of such a character as to be injurious in its natural and proximate consequences.

4. Trespass — Rightful Entry — Unlawful Acts—Evidence—Assault and Battery—Torts—Consequential Damages.

It is not necessary that the employees of a telegraph company entering rightfully upon the lands of the owner to perform their duties to their employer should actually commit an assault or a battery upon the owner or his family to make the employer liable for the consequent and proximate damages caused by their acts done in violence and in disregard of the owner's rights.

**5. Trespass—Torts—Mental Suffering—Damages.**

The tortious entry or trespass upon the lands of another supports a right of action for physical injuries resulting from a willful or a negligent act, none the less strongly because the physical injury consists of a wrecked nervous system instead of wounded or lacerated limbs, and it is not necessary that there must have been some direct physical injury in order to render the defendant's acts tortious, in a legal sense, and consequently actionable.

**6. Same—Parties—Owner—Injury to Wife—Recovery by Husband— Measure of Damages.**

The husband may recover in his own name in an action for damages done to his wife in consequence of an unlawful trespass of another for his separate loss or damage, as where he is put to expense or is deprived of the society or services of his wife; and where the injuries are of a permanent nature a recovery by him may be had of such sum as will fairly compensate him for her future diminished capacity to labor, but excluding from the damages recoverable any mental suffering upon his part.

**7. Same—Punitive Damages.**

Punitive damages may be recovered by the husband for injuries inflicted upon his wife in consequence of an unlawful trespass of another, when the wrong is willful or wanton or done maliciously, or accompanied by acts of oppression, insult, or brutality, as an example to others and to vindicate justice.

Appeal by defendant from *Daniels, J.*, at April Term, 1911, of Guilford.

The facts are sufficiently stated in the opinion of the Court by *Mr. Justice Walker.*

*R. C. Strudwick and F. P. Hobgood, Jr., for plaintiff.*
*King & Kimball for defendant.*

Walker, J. This action was brought to recover damages for a trespass on land. The plaintiffs, husband and wife, alleged that the servants of the defendant entered upon the land of John May, where they were living, for the purpose of removing telegraph poles, and while so engaged in their employer's business, unlawfully and wrongfully violated the rights of the plaintiffs, as occupants of the land, by entering their home, and accompanied their act of trespass by menaces of violence and the use of profane and vulgar words, and by other conduct and acts,

which were unprovoked and nothing less than inexcusable, if not wanton. The defendants justify upon the ground that they had the right to enter in order to remove certain telegraph poles within the right of way of the North Carolina Railroad Company, or its lessee, the Southern Railway Company, and that John May, the owner of the land, licensed them to enter, and that if they did not enter lawfully by his permission, they had the lawful right to enter and remove the poles by reason of the permission of the railway company to the telegraph company to do so, the *locus in quo* being within the right of way of the railway company.

We will assume, for the sake of the discussion, that the defendant, by its servants, entered lawfully upon the land; and yet this did not excuse them for what was done after their entry was made. The servants of the defendant were about their master's business when they committed the act of trespass, and they apparently did it for the purpose of advancing his interests, while doing the work assigned to them by him, in the prosecution of that work and within the scope of their authority.

There were many exceptions taken to matters of evidence, and others were addressed to collateral questions, and all of them subsidiary to the main point.

1. Was the defendant, by its servants, guilty of a trespass upon the plaintiff's premises?

2. If so, were the plaintiffs entitled to recover punitive damages, in addition to those which are compensatory?

The defendant's lawful right of entry upon the land did not authorize it, or its servants, to do so in a violent and insulting manner, regardless of the rights of others. We do not think that we venture anything in asserting this to be a general statement of the law. There was evidence in the case to the following effect: That the servants of the defendant, during the day in question and while on the premises of John May engaged in the work already described, indulged in loud, profane, and boisterous language and sang lewd and vulgar songs, to the terror of the *feme* plaintiff and others; that they yelled at the *feme* plaintiff and others in the house; that they invaded the house and at one time seized a guitar which was there and

played on it and sang ribald songs; that Stern, defendant's principal foreman in charge of said crews, went to the well nearby and, facing the open door of the *feme* plaintiff's bedroom, yelled at her and sang lewd and vulgar songs in her immediate presence and hearing; and the noise and tumult, the profanity and vulgar songs of defendant's servants throughout the day and while engaged in moving the poles in question, were so great, loud, and boisterous as to be heard by many people in the neighborhood; that in the morning, standing on the railroad tracks, John L. May, one of the plaintiffs, told Stern and May, the two foremen of defendant, in charge of said crews, of the bad and precarious health of his wife and that she was in the house, and asked them not to go upon the property of his father; that Stern replied that he had orders from the defendant to set the poles on John May's land, and that he would set them there regardless of witness's or any other man's wife, and that he did not "give a damn." There was further evidence as to the injury suffered by the *feme* plaintiff, resulting in a state of unconsciousness, followed by great suffering and permanently impaired health, and as to the damage suffered by the male plaintiff in consequence of the defendant's wrong.

The defendants entered, at first, lawfully, but afterwards abused their right of entry, while in the prosecution of their work, by acts and conduct which were plainly in violation of the rights of the plaintiffs, who were then in the lawful and peaceable possession of the premises. Conduct more reprehensible, under the circumstances, could not well be imagined. The *feme* plaintiff was in a delicate condition, and in consequence of the violent and insulting manner in which the defendants invaded her home and even her private apartments, her health was greatly impaired. Defendant answers that its servants did not know of her physical condition; but this is no excuse. Their tortious acts were the immediate, natural, and proximate cause of her injuries. So far as the liability of the defendant, for this wrong, is concerned, it is not necessary that it should have contemplated the particular injury which the wrongful act produced, but it is liable if the wrong was of such a character as to be injurious in its natural and proximate consequences. It can

make no difference, in the view of the law, whether it hurts one part or another of the person who is injured. The law will not excuse a defendant if, in committing the wrongful act, he aimed at the foot to wound and killed by striking the head or the heart. His wrong is the same in law, and is actionable, though he may have missed his mark. He is, in such a case, presumed to have intended the natural and probable consequences of his act. *Drum v. Miller,* 135 N. C., 204. In that case, distinguishing negligent from willful torts, we said: "In the case of willful or intentional wrongdoing, we have an act intended to do harm, and harm done by it, and the inference of liability from such an act may seem a plain matter, under the general rule of liability, and, assuming that no just cause of exception to it is present, 'It is clear law that the wrongdoer is liable to make good the consequences, and it is likewise obvious to common sense that he ought to be. He went about to do harm, and having begun an act of wrongful mischief, he cannot stop the risk at his pleasure nor confine it to the precise objects he laid out, but must abide it fully and to the end.' The principle is commonly expressed in the maxim that a man is presumed to intend the natural consequences of his acts." It will be seen from this quotation that, in the case of a willful tort, the wrongdoer is responsible for the direct and proximate consequences of his act, without regard to his intention to produce the particular injury. But the matter is made clearer, and the ruling in that case more pertinent to the question now under consideration, by what the Court said later, at page 214: "It may be stated as a general rule, that when one does an illegal or mischievous act, which is likely to prove injurious to another, or when he does a legal act in such a careless and improper manner that he should foresee, in the light of attending circumstances, that injury to a third person may naturally and probably ensue, he is answerable in some form of action for all of the consequences which may directly and naturally result from his conduct. It is not necessary that he should actually intend to do the particular injury which follows, nor, indeed, any injury at all, because the law in such cases will presume that he intended to do that which is the natural result of his conduct in the one case, and in the

other he will be presumed to intend that which, in the exercise of the care of a prudent man, he should see will be followed by injurious consequences."

But it seems to us that this case, in all of its essential features, is like that of *Jackson v. Telegraph Co.,* 139 N. C., 347, and must be governed by it. The language there used is so directly applicable to the facts disclosed by the evidence in this case that we cannot more clearly state the law, which we think should determine the question now presented, than by repeating what we then said: "The jury have found that the defendant, by its servant, caused the plaintiff to be unlawfully arrested for the purpose of putting him out of the way, so that its agents and servants might erect telephone and telegraph poles on his land. If this is not an act done in the course of the employment and in furtherance of the master's business for his benefit and advantage, it would be hard to conceive of one that would come under that class. The case is in principle like that of *R. R. v. Harris,* 122 U. S., 597, which has, at least twice, been approved by this Court. *Hussey v. R. R.,* 98 N. C., 34; *Redditt v. Manufacturing Co.,* 124 N. C., 100. In *Harris's case* the defendants by their servants committed, it is true, a direct and violent trespass upon lands in order to carry on their master's work, and in doing so shot and injured the plaintiff; but is there any difference in law between the two cases? It is not the quality of the act that determines the master's liability, but the fact that it is done by his implied direction, that is, within the scope of the servant's authority, in the course of his employment and in furtherance of his master's interests. *Daniel v. R. R., supra; Daniel v. R. R.,* 117 N. C., 592; *Kelly v. Traction Co.,* 133 N. C., 418; *Lovick v. R. R.,* 129 N. C., 427; *Williams v. Gill,* 122 N. C., 967; *Pierce v. R. R.,* and *Cook v. R. R., supra.* It was in this case a question for the jury under proper instructions from the court, whether McManus in arresting the plaintiff was performing his master's business, or was engaged in some pursuit of his own. *Hussey v. R. R.* and *Daniel v. R. R., supra;* Tiffany on Agency, 271. The court charged fully and correctly in respect to this matter." And so in the case at bar, the court instructed the jury fully upon the facts and the law, in a clear

and able charge, which surely could have left no doubt in the minds of the jurors as to what the rights of the parties were under the law and upon the facts as they might find them to be. The fact that the defendant's servants did not commit an assault or a battery upon the plaintiffs cannot change the result. They unlawfully trespassed upon their property, and if their other acts did not, by themselves, constitute an actionable wrong, the jury could, at least, consider them in aggravation of damages.

We held in *Kimberly v. Howland*, 143 N. C., 398, that the general principles of the law of torts support a right of action for physical injuries resulting from either a willful or a negligent act, none the less strongly because the physical injury consists of a wrecked nervous system instead of wounded or lacerated limbs, as those of the former class are frequently much more painful and enduring than those of the latter. Approving what is said in the text-books, *Justice Brown,* who wrote an able and learned opinion for the Court in that leading case, thus summarized the result of our investigations: "A recent writer on the subject trenchantly says: 'To deny recovery against one whose willful or negligent tort has so terribly frightened a person as to cause his death, or leave him through life a suffering and helpless wreck, and permit a recovery for exactly the same wrong which˙ results, instead, in a broken finger, is a travesty upon justice. The reasoning which can lead to such a result must be cogent indeed if it should be entitled to respect.' Case and Comment, August, 1906. A text-writer of repute says: 'The preferable rule on this subject is, in our opinion, that if a nervous shock is a natural and proximate consequence of a negligent act, and physical injuries result directly from mental disturbance, there should be a recovery for the anguish of mind and the consequent physical loss, irrespective of contemporaneous bodily hurt.' Watson on Damages for Personal Injuries, sec. 405." This is a sufficient answer to the contention that there must have been some direct physical injury to the plaintiffs, in order to render the acts of the defendant's servants tortious, in a legal sense, and consequently actionable.

The *Howland case* also answers another position of the defendant, that the husband of the *feme* plaintiff cannot recover

for the wrong done to his wife, and in these words: "It is contended that the husband has sustained no injury, and as to him the motion to nonsuit should have been allowed. It seems to be well settled that where the injury to the wife is such that the husband receives a separate loss or damage, as where he is put to expense or is deprived of the society or services of his wife, he is entitled to recover therefor, and he may sue in his own name. 15 Am. and Eng. Enc. Law (2 Ed.), 861, and cases cited. In this case there is no evidence of an outlay of money in medical bills and other actual expenses, and the court so .charged the jury and directed them to allow nothing on that account. His Honor correctly instructed the jury to allow nothing because of any mental suffering upon the part of the husband. There was, however, evidence as to the loss of the services of the wife, and that the injury inflicted was of such a character as to deprive the husband of her society, services, aid, and comfort. The court further charged that if the injuries are permanent, the husband could also recover such sum as will be a fair compensation for the future diminished capacity to labor on the part of the wife. This instruction, we think, is correct and supported by authority. 6 Thompson's Negligence, secs. 7341, 7342. It is impossible to lay down a rule by which the value of her services and the loss of the wife's society can be exactly measured in dollars and cents. All the judge can do is to direct the jury to allow such reasonable sum as will fairly compensate the husband therefor under all the circumstances of the case." It may be added that, in this case, defendant's servants trespassed upon the husband's property—his home. He had possession, and they entered after being forbidden to do so.

As to punitive damages, the rule is well settled that when the wrong is willful or wanton or done maliciously, or accompanied by acts of oppression, insult, or brutality, exemplary damages may be added by the jury to punish the offender, as an example to others and to vindicate justice. Hale on Damages, p. 209. The subject is fully considered in the recent case of *Saunders v. Gilbert,* 156 N. C., 463, the facts being substantially like those in this case, and we refer to that decision without further dis-

cussion of this exception as to the correctness of the court's ruling that the jury could, in their discretion, allow punitive damages.

We have considered the case as if the defendant's right to enter upon the land as part of the right of way of the North Carolina Railroad Company, by its permission, was clear, though the concession was made only for the sake of argument. It had no right, by itself or its servants, to abuse the license or privilege by grossly violating the rights of others in peaceable possession of the land; and especially, it may be said, the defendant, by its servants, did not have the lawful right to enter the home of plaintiffs in the manner adopted by them. Their entry upon the premises had been forbidden and was opposed, though not forcibly, by the owner and occupants of the land. The acts complained of were committed in an effort to overcome this opposition, by overawing the plaintiffs, in order that defendant's servants might proceed unmolested in the prosecution of their master's business.

The other exceptions require no special consideration.

No error.