BRABAZON and wife, Respondents, vs. JOANNES BROTHERS COMPANY and another, Appellants.

*March 7—June 6, 1939.*

For the appellant Joannes Brothers Company there was a brief by *North, Bie, Duquaine, Welsh & Trowbridge* of Green Bay, and oral argument by *F. N. Trowbridge*.

For the appellant J. Lipsner there was a brief by *Bendinger, Hayes, Kluwin & Schlosser* of Milwaukee, and oral argument by *John A. Kluwin*.

For the respondents there was a brief by *Kaftan, Rahr & Kaftan* of Green Bay, and oral argument by *Robert A. Kaftan.*

FRITZ, J.   The defendants, J. Lipsner and Joannes Brothers Company appeal from a judgment against them for the recovery of damages sustained by each of the plaintiffs as the result of injury to Mildred Brabazon on June 23, 1936, by her inhalation of the vapor of a mixture which contained pyrethrum to which she was allergic.   The mixture was made by the Tanglefoot Products Company for the purpose of killing flies.   It was used in connection with water in a machine called a difusor to generate steam, which was forced out through a nozzle so as to cause it to float in the air and kill insects.   Lipsner had the sale as a broker of the mixture in a number of counties in Wisconsin and Michigan, and he received a commission on every gallon sold there.   But he did not sell the difusor machines.   Joannes Brothers Company, a wholesale grocery house located at Green Bay, purchased difuso from Lipsner, and the difusor machines directly from the factory and resold both to its trade.   Andrew Kay was a salesman in the employment of the Joannes Brothers Company.   He called regularly weekly on its customers, including the plaintiffs.   Several days before June 23, 1936, Lipsner, accompanied by Frank Dicker, attended a meeting of the salesmen of Joannes Brothers Company at its office in Green Bay to promote the sale of difuso.   Lipsner said that Dicker, who was a specialty man, would come and assist salesmen in pushing the sales of difuso, and it was arranged that during the following week Dicker would call with Kay on customers of the Joannes Brothers Company.   Dicker's work as a specialty man was to introduce the article which was to be sold to the retailer by explaining and demonstrating to him the principles thereof and how to use it.   At times he traveled with a jobber's salesman, and taught him how to sell in the

future whatever item he had to sell. Whenever a specialty man took an order from a retailer, he would make out the order in the name of whatever wholesaler that particular retailer did business with. He had the same arrangement as Lipsner had with the Tanglefoot Company; and he acted as a subagent for Lipsner, who made the arrangements with Joannes Brothers Company for Dicker to go up and work with that company's salesman. Dicker was not paid by Joannes Brothers Company. He got the difference between the price that Lipsner made to him for difusors and the price he sold them at; and when Joannes Brothers Company ordered difuso, Dicker would get a commission on every sale. He furnished his own car, paid his own expenses, and determined what hours he would call on parties within the territory assigned to him. On June 23, 1936, Dicker and Kay went to plaintiffs' store in a car which belonged to Joannes Brothers Company. Kay introduced Dicker to Alden Brabazon, and Dicker told him about difuso, the use of the difusor, and how it worked. There is a conflict in the testimony as to the conversation, and in what portion of the store it took place. According to the plaintiffs' testimony it took place in the portion of the store which was to the front of a partition, extending part way to the ceiling, that set off a nine-feet-deep office space at the rear of the store. Mildred Brabazon was waiting on customers in the front part of the store while Dicker was speaking to her husband. Alden Brabazon testified that when Dicker mentioned the price, including the cost of the difusor, Brabazon replied that the price was too much for flies and he was not interested; and that he then waited on customers. Dicker testified that he saw the possibility of a sale, and so he asked Alden Brabazon if he would like a demonstration, which would only take a few minutes; that Alden Brabazon said all right, and so Dicker asked him where they could connect the machine; that Alden Brabazon said the only place would be in the rear; that

Dicker, Kay, and Alden Brabazon then went into the rear room; that Louis Barres, the proprietor of an adjoining meat market came in through a rear door and joined them; that it takes one or two minutes to get the machine in operation, as the water has to boil and create steam; that, while it was working and throwing out this mist, and while he and Kay and Alden Brabazon were standing there, Mildred Brabazon came into the room and said to shut off the machine, that she couldn't stand it; that Dicker immediately shut it off, and Mildred Brabazon went through to the rear and out the side door and became very sick. On the other hand, testimony introduced on behalf of the plaintiffs was to the effect that there was no conversation between Dicker and Alden Brabazon in relation to making a demonstration; that the latter did not tell Dicker that it was all right to make the demonstration, and go into the rear room with Dicker and there watch him plug the electric cord into an outlet and then vaporize the mixture; that Louis Barres entered the rear room through a door in the rear, and Dicker and Kay spoke to him about difuso and asked whether they could demonstrate it in his shop, and they then said they might just as well do so where they were; that Dicker looked for an electric outlet and connected the difusor by an electric cord to a plug in the office beyond the partition; that when the liquid began to boil and the mist began to spread, Dicker said he forgot to add water, and then got some in a lavatory and added it; that Mildred Brabazon became aware of the presence of fly spray in the store by reason of a customer's acts and the smell of the fly spray, and then immediately started for the back of the store; that Alden Brabazon also saw it, but as he noticed her on her way to stop it he left the stopping thereof to her; that, when she got into the thick mist in the rear room, all she could do was to open her mouth to order a stop to the proceeding, and when she inhaled some of the vapor it made her very sick and she collapsed.

At the conclusion of the testimony the parties agreed that there was a question of law for the court as to whether Lipsner and the Joannes Brothers Company were engaged in a joint adventure; and in answer to two questions submitted to the jury (in addition to questions as to damages) the jury found as follows:

"1. Did the plaintiff, Mildred Brabazon, sustain an injury on June 23, 1936, by the inhaling of difuso spray, which had been liberated by the salesman Frank Dicker? Answer: Yes.

"2. Did the plaintiff Alden Brabazon give his permission and consent to a demonstration of spraying difuso, from the difusor? Answer: No.."

Upon motions after verdict the court concluded that Lipsner, Dicker, and the Joannes Brothers Company were engaged in a joint enterprise, and the court ordered judgment upon the verdict for the plaintiffs' recovery from the defendants of the damages assessed by the jury.

The plaintiffs contend that the judgment was warranted by the evidence because it established that Dicker and Kay participated in making a demonstration of the fly-spray mixture with the use of the difusor; that their acts were unlawful because there was no implied license to demonstrate, and therefore their acts constituted trespass, and assault and battery, from which liability flows; and that Joannes Brothers Company and Lipsner were liable for those acts and the resulting damages, because Kay and Dicker were agents of Joannes Brothers Company, or, if Dicker was not an employee of the latter, then he was a joint adventurer with it and Lipsner, and as such all of them are liable for the acts of Dicker.

On the other hand, Lipsner and Joannes Brothers Company contend that neither is liable for Dicker's acts because he was not an agent or employee of either of them, and they were not engaged in a joint enterprise; and Joannes Brothers Company also contends that if any unlawful act was com-

mitted it was by Dicker and not by Kay. Moreover, Joannes Brothers Company contends that the plaintiffs have no cause of action whatsoever because as salesmen Dicker and Kay had an implied license to enter the store for the purpose of offering the articles in question for sale to the plaintiffs as proprietors, and if it was customary or necessary to demonstrate their use, then the implied license extended to the demonstration, in the absence of an express revocation or termination thereof, and that the plaintiffs had not revoked or terminated the license or forbidden the making of the demonstration.

Kay and Dicker, in entering the plaintiffs' store for the purpose of transacting business with them in relation to articles useful in the conduct of the store, were business visitors, who, as such, were impliedly licensed to enter and be there for the purpose of offering articles and demonstrating the nature or operation thereof in the usual and customary manner, as long as reasonably necessary to accomplish those purposes or the plaintiffs permitted them to remain. 2 Restatement, Torts (Negligence), pp. 893, 898, §§ 330, 332; 1 Restatement, Torts (Intentional Harms), pp. 402, 403, 405, § 167; 2 Cooley, Torts (4th ed.), p. 238, § 248; *Crouch v. Ringer,* 110 Wash. 612, 188 Pac. 782; *Breitenbach v. Trowbridge,* 64 Mich. 393, 397, 31 N. W. 402, 8 Am. St. Rep. 829; *Woodman v. Howell,* 45 Ill. 367, 92 Am. Dec. 221.

However, as is stated in 1 Restatement, Torts, p. 402, § 167, "an entry in pursuance of a consent given for a particular purpose is privileged only if the entry is for that purpose, and the privilege continues only for such time as is necessary to accomplish the purpose." See also 2 Cooley, Torts (4th ed.), p. 257, § 252. And, as is stated in 1 Restatement, Torts, p. 412, § 171, "a consent is terminated when the actor knows or has reason to know that the possessor is no longer willing that the actor shall enter or remain on the land. A consent is so terminated when the actor knows that the possessor has done an act which is necessarily

inconsistent with a continuance of the consent." In the case at bar the issue as to whether there was any such termination of the implied license, under which Dicker and Kay entered and Dicker offered the articles to Alden Brabazon, was not passed upon by the jury or expressly determined by the court. If that issue had been submitted for determination, the following testimony given by Alden Brabazon would have admitted of finding that, so far as the plaintiffs were concerned, they had ceased to consider the purchase of the offered articles, and that, consequently, there was a termination of the salesmen's license before they began a demonstration, to wit:—

"after explaining about the working principle I asked him [Dicker] about the cost of the article. He said it was around $16. I said it was too much for flies. At that time Mrs. Brabazon called me, told me to come over and help her. I don't remember whether or not at any time he or Mr. Kay asked to be allowed to plug this apparatus in and demonstrate. it. He didn't ask me. I don't remember whether there was any talk about whether it should be demonstrated or not. I don't remember whether there was any talk whether I had any electric outlet. I went to help Mrs. Brabazon.

"Q. And what did these men do, Mr. Kay and Mr. Dicker? A. I didn't pay any attention to the men at that time. I went on to wait on a customer and in waiting on this customer I happened to look up and I noticed the men were not in the room.

"Q. In the back room? A. Well, I didn't know, any particular attention, where they were although I did hear voices in the back room."

That testimony also warranted the jury's finding that Alden Brabazon did not give permission and consent to a demonstration of spraying difuso from the difusor. If there was a termination of the salesmen's license, and the plaintiffs did not otherwise consent to a demonstration, or if it was made solely to induce Louis Barres, the proprietor of the meat market, to purchase the articles, then making a demon-

stration was an abuse of the license under which they entered, and by reason of that abuse the plaintiffs would be entitled to recover for damages sustained by them as a result thereof. "The plaintiff may recover for all the trespass not justified by a license which is relied upon in defense. So a license will not constitute a defense for an injury which results from its abuse, and not from a due and proper execution of it." 1 Hilliard, Torts (4th ed.), p. 180, § 30; Cooley, Torts (2d ed.), p. 372; Restatement, Torts, pp. 407–409, § 168; *Snedecor v. Pope,* 143 Ala. 275, 39 So. 318; *Louisville & Nashville R. R. Co. v. Bartee,* 204 Ala. 539, 86 So. 394; *May v. Western Union Tel. Co.* 157 N. C. 416, 72 S. E. 1059, 37 L. R. A. (N. S.) 912; *Dixie Construction Co. v. McCauley,* 211 Ala. 633, 101 So. 601; *Jewell v. Mahood,* 44 N. H. 474; *Stone v. Knapp,* 29 Vt. 501; *Dumont v. Smith,* 4 Denio (N. Y.), 319; *Dingley v. Buffum,* 57 Me. 379; *Spades v. Murray,* 2 Ind. App. 401, 28 N. E. 709.

In view of the controlling importance of the issue as to whether there was a termination of the license prior to the making of the demonstration, that issue should have been determined by the jury. If a finding thereon were involved only as a basis for sustaining the judgment, the issue could be deemed to have been decided by the court in conformity with the judgment (sec. 270.28, Stats.; *Delfosse v. New Franken Oil Co.* 201 Wis. 401, 230 N. W. 31) inasmuch as neither party requested a jury finding thereon, and the evidence admitted of a finding favorable to the plaintiffs. However, that presumption is not applicable to an instruction to the jury, the propriety and application of which depends upon a certain state of facts as to which there is an issue under the evidence. On this appeal Joannes Brothers Company contends that the court erred in instructing the jury that the burden of proof was on the defendants to establish that Alden Brabazon gave his permission and consent to make a demonstration of spraying difuso from the difusor. That

instruction would have been proper if the demonstration had been made upon an entry by Dicker and Kay on the premises without any license whatever (*Lockhart v. Geir,* 54 Wis. 133, 11 N. W. 245; 1 Restatement, Torts (Intentional Harms), p. 401), but, inasmuch as they had an implied license to do so, unless there was a termination thereof, the instruction was proper and applicable only if there was in fact a termination of the license prior to the demonstration. Consequently, in the absence of a finding to that effect, and a direction to the jurors that it was only in the event of their so finding that the instruction given as to the burden of proof was applicable, that instruction was erroneous and prejudicial to the defendants. By reason of that error the defendants are entitled to a new trial, in so far as the sustaining of the judgment is dependent upon the plaintiffs' contention that the making of the demonstration was an abuse of the implied license and constituted an actionable trespass.

Plaintiffs' alternative contention, that the making of the demonstration and the resulting injury to Mildred Brabazon can be held to have constituted assault and battery, because of which the defendants are liable for the resulting damage, cannot be sustained in view of the absence of any intention to do harm. As this court has said,—

" 'An assault is an intentional attempt, by violence, to do an injury to another.' . . . If there is no such intention,— no present purpose to do such injury,—then there is no assault. . . . 'The intention to do harm is of the essence of an assault, and this intent is to be collected by the jury from the circumstances of the case.' . . . 'In the case of a mere assault, the *quo animo* is material, as without an unlawful intention there is no assault.' " *Degenhardt v. Heller,* 93 Wis. 662, 664, 68 N. W. 411; *Donner v. Graap,* 134 Wis. 523, 527, 115 N. W. 125; *Vosburg v. Putney,* 80 Wis. 523, 527, 50 N. W. 403.

The contentions of the defendants that even if there were some tort liability by reason of Dicker's acts or conduct, they

are not liable therefor, because he was not in the employment of or engaged in a joint enterprise with either of them, must be sustained. There is no evidence which would warrant holding any relationship existed between Dicker and either of the defendants, because of which the doctrine of *respondeat superior* is applicable. Instead, in that respect the evidence conclusively establishes that his status was rather in the nature of that of an independent contractor who was not subject to control, direction, or supervision by either of the defendants. *Badger Furniture Co. v. Industrial Comm.* 200 Wis. 127, 227 N. W. 288; *Kruse v. Weigand,* 204 Wis. 195, 235 N. W. 426; *Kassela v. Hoseth,* 217 Wis. 115, 258 N. W. 340. Likewise, the evidence does not admit of finding that either of them was engaged in a joint enterprise with Dicker. Although each of the parties, including Dicker, was to profit in his own way to some extent by reason of increased sales of the difuso, they were not to share or participate in any common or joint profit. There was no contractual relationship or obligation between them in relation to the conduct of the sales campaign and the expense incurred thereby. Their respective duties and responsibilities, as well as their respective returns or profits, were several. As each was acting on his own accord, without any obligation or responsibility to the other, and there was no joint or common duty or financial interest involved, or any thing in the nature of a mutual agency or partnership between them, the relation of joint adventurers did not exist. *Fischbach v. Wanta,* 212 Wis. 638, 250 N. W. 387; *Sommerfield v. Flury,* 198 Wis. 163, 223 N. W. 408.

The contention of the Joannes Brothers Company that there is no liability on its part by reason of the acts of its salesman Kay depends upon whether he in fact participated with Dicker in making the demonstration or whether his participation in Dicker's transactions at the plaintiffs' store ceased after the introduction of Dicker to them. The testi-

mony in those respects is so indefinite and equivocal, by reason of the apparently indiscriminate use of the pronoun "they" by the witnesses in testifying as to what was done by Dicker or Kay, that the matter is left virtually in the field of conjecture. Although it appears that Kay was present while Dicker was demonstrating, it is difficult to determine whether there was any act or conduct on the part of Kay by which he aided or otherwise participated therein so as to render his employer responsible therefor, under the doctrine of *respondeat superior*. The confusion and uncertainty in that respect will probably be avoided in the event of another trial. It follows that the judgment must be reversed with directions to dismiss the complaint against Lipsner and to grant a new trial in the action against Joannes Brothers Company.

*By the Court.*—Judgment reversed with directions to grant judgment dismissing the complaint against the defendant, Lipsner; and to enter an order granting a new trial of the action against Joannes Brothers Company.