Hart, J.,
 

 concurring. I concur in the judgment in this case, but since there has been such a contrariety of opinion upon the part of the courts as to the basis of
 
 *170
 
 liability or non-liability for judgments heretofore rendered herein, I am constrained to give my reasons for concurrence in the present judgment of this court.
 

 At common law trespass originally had to do with a forcible and wrongful invasion of the right of possession of real estate. Later the action of trespass was available to recover compensation for damage directly done by violence, whether such damage is in the form of injury to persons or is done to land, or consists of the asportation of chattels. The force element was always conspicuous and made trespass a semi-criminal wrong. It was not applied to consequential damages which flowed from the invasión of another’s possessory rights in real estate which was not accompanied with force. For this latter type of injury the common law invented a writ known as “trespass on the case”' which was applied to all tortious acts other than trespass in which force was a necessary element. The classical illustration of this distinction was made by Fortesque, J., in the case of
 
 Reynolds
 
 v.
 
 Clarke
 
 (1725), 1 Strange, 634, 93 Eng. Rep. R., 747, when he said: “If a man throws a log into the highway, and in that act it hits me, I may maintain trespass, because it is an immediate wrong; but if as it lies there I tumble over it, and receive an injury, I must bring an action upon the case, because it is only prejudicial in consequence.’’ See, also,
 
 Scott, an Infant,
 
 v.
 
 Shepherd, an Infant
 
 (1722), 2 Black. W., 892, 3 Wils C. Pl., 403, 96 Eng. Rep. R., 525 (the famous squib case.)
 

 For intentional injury done by the direct application of force a person is absolutely liable; and for injury done by the direct application of force under such circumstances that the law can ascribe to the actor an intention to do harm, he is also absolutely liable, and this is true regardless of whether he is or is not a trespasser at the time of the wrongful act.
 

 The extent of liability of a person for consequential
 
 *171
 
 injuries which flow directly from his acts while on the premises of another depends upon his status in relation to such premises at the time of injury. One who-becomes an intentional trespasser on the land of another even though his entry is due to negligence or ignorance on his part is guilty of an unprivileged intrusion. Because of his wrongful entry, he is liable notwithstanding the exercise of due care while thereon,, not only for damages to the premises (1 Restatement of Torts, 359, Section 158;
 
 Reynolds
 
 v.
 
 Clarke, supra; Wyant
 
 v.
 
 Crouse,
 
 127 Mich., 158, 86 N. W., 527, 53 L. R. A., 626;
 
 Newsom
 
 v.
 
 Meyer, Jr.,
 
 102 Conn., 93, 128 A., 699;
 
 Western Union Telegraph Co.
 
 v.
 
 Smith,
 
 64 Ohio St., 106, 59 N. E., 890;
 
 City of Barberton
 
 v.
 
 Miksch,
 
 128 Ohio St., 169, 190 N. E., 387); but for consequential bodily injury to the occupant of the premises or to a member of his family which are the proximate result of his acts. The latter portion of. this rule is stated in 2 Restatement of Torts, 1016, Section 380, as follows:
 

 “A trespasser on land is subject to liability for bodily harm caused to the possessor thereof or to-members of his household by any act done, activity carried on or condition created by the trespasser while upon the land irrespective of whether the trespasser’s conduct is such as would subject him to liability were he not a trespasser.”
 

 In further explanation, comment
 
 c
 
 on this section says:
 

 “It is * * * not necessary to the liability of the trespasser that his conduct should be intentionally wrongful or recklessly or negligently disregardful of the interests of the possessor or a member of his household or an activity which, like blasting, is so hazardous that it must be carried on at the risk of answering for harm however caused by it. Thus, one who trespasses upon the land of another incurs the risk of becoming liable for any bodily harm which is caused to
 
 *172
 
 the possessor of the lapd or to members of his household by any conduct of the trespasser during the continuance of his trespass no matter how otherwise innocent such conduct may be.”
 

 By inaccurate nomenclature this type of wrong and the action by which it is redressed is still denominated trespass under our modern law. It is recognized and illustrated in the following cases:
 
 Watson
 
 v.
 
 Dilts,
 
 116 Iowa, 249, 89 N. W., 1068, 57 L. R. A., 559;
 
 Mitchell
 
 v.
 
 Mitchell,
 
 54 Minn., 301, 55 N. W., 1134;
 
 Lesch
 
 v.
 
 Great Northern Ry. Co.,
 
 97 Minn., 503, 106 N. W., 955, 7 L. R. A. (N. S.), 93;
 
 Engle
 
 v.
 
 Simmons,
 
 148 Ala., 92, 41 So., 1023;
 
 Continental Casualty Co.
 
 v.
 
 Garrett,
 
 173 Miss., 676, 161 So., 753;
 
 Matheson
 
 v.
 
 American Telephone & Telegraph Co.,
 
 137 S. C., 227, 135 S. E., 306; and
 
 Brabazon
 
 v.
 
 Joannes Bros. Co.,
 
 231 Wis., 426, 286 N. W., 21.
 

 The case last cited is a typical example of the rule just, stated. A salesman for the defendants called at the store of Brabazon, one of the plaintiffs, to introduce a new kind of fly spray. While such salesman was giving a demonstration in the rear of the store, the wife of the store owner, the other plaintiff, who was clerking in the front of the store, became aware of the odor of the fly spray and in attempting to stop the demonstration, she inhaled some of the vapor which contained a chemical to which she was allergic, and as a result she became ill. There was some contention as to whether the defendant’s servant had permission to demonstrate the fly spray at the time when and in the part of the store where he made the demonstration. There' was a verdict and judgment for the plaintiff but the Supreme Court reversed the judgment because of an erroneous charge of the trial court to the effect that the. defendant must show permission to make the. demonstration, whereas the reviewing court held that there was an implied license to make the demonstra
 
 *173
 
 tion unless the store owner revoked the privilege before the demonstration was actually made. The court-held that if the' jury, on retrial, should find that the license had been revoked before the demonstration was-made, then the making of the demonstration was an abuse of the privilege and by reason of the abuse the-plaintiffs would be entitled to recover for damages-sustained as a result thereof.
 

 But liability may attach to a licensee for negligent conduct while in the enjoyment of his license which results in injury to another upon the premises. 1 Restatement of Torts, 405, Section 167, comment
 
 g.
 
 See, also,
 
 Keithley
 
 v.
 
 Hettinger,
 
 133 Minn., 36, 157 N. W., 897;
 
 Cushing
 
 v.
 
 Adams,
 
 35 Mass. (18 Pick.), 110, 114.
 

 In my judgment a claim of liability of the defendant in this case might be predicated on one of two possible theories — -first, that the bodily injury of the plaintiff was the result of the acts of defendant’s servant while a trespasser; or second, that even though defendant’s servant was a licensee, he acted negligently and that such negligence proximately caused the injury. In this connection I am expressing no opinion as to whether negligence, as a basis of liability in this case, is still available, or whether it has been waived by the pleadings or has been foreclosed by the law of the case. See
 
 New York Life Ins. Co.
 
 v.
 
 Hosbrook,
 
 130 Ohio St., 101, 196 N. E., 888.
 

 The facts in this case as to the status of the defendant’s servant in relation to the home of plaintiff’s parents at the time of the accident, that is whether he was a trespasser or licensee, are practically undisputed. Generally where ultimate facts are undisputed a question of law is presented for the court.
 
 Schickling, an infant,
 
 v.
 
 Post Publishing Co.,
 
 115 Ohio St., 589, 155 N. E., 143. However, where an ultimate fact must be determined from inferences to be drawn from other facts and where reasonable minds might reach
 
 *174
 
 different conclusions from such inferences as to the ultimate fact, it is proper to submit the question of the determination of the ultimate fact to the jury.
 

 Such a situation is here presented and this is forcibly demonstrated by the diversity of holdings and judgments of the various courts which heard this case, the details of which are fully set out in the statement of facts. Under such circumstances, the question of the status of defendant’s servant is one for a jury. I concur in the reversal of the judgment and a remand for new trial.