Hart, J.
Tbe plaintiff joined tbe defendants on the theory that they were joint adventurers. The defendants deny that they were joint adventurers and hence claim that they were improperly joined in tbe action. There was also a claim that tbe evidence does not show that tbe collision between decedent’s car and Rohloff’s truck was tbe proximate cause of tbe decedent’s death.
*502 In dealing with the relationship of joint adventure, difficulty arises in differentiating the legal implications of the relationship with their consequences from those of certain allied relationships such as partnership, principal and agent, master and servant, independent contractor, debtor and creditor, bailor and bailee, and joint tort-feasors. At the outset, therefore, it is pertinent to name, legally define, and differentiate, where necessary, the several essential elements of the relationship of joint adventure, within the field of the law of negligence.
Joint contract.
A joint business adventure necessitates a joint contract, express or implied, between the joint adventurers to engage in a specific business enterprise, which contract does not, however, create the formal relationship of partnership. Fitzhugh v. Thode, 221 Iowa, 533, 265 N. W., 893; Soulek v. City of Omaha, 140 Neb., 151, 299 N. W., 368.
Intention.
Whether parties have created, as between themselves, the relationship of joint adventure or some other relationship depends upon their actual intention, and such relationship arises only when they intend to associate themselves as joint adventurers. That intention, however, is to be determined in accordance with the ordinary rules governing the interpretation and construction of contracts. Hathaway v. Porter Royalty Pool, Inc., 296 Mich., 90, 295 N. W., 571, 138 A. L. R., 955; Reid v. Shaffer, 249 F., 553; Berkey v. Third Ave. Ry. Co., 244 N. Y., 84, 155 N. E., 58, 50 A. L. R., 599; Rae v. Cameron, 112 Mont., 159, 114 P. (2d), 1060.
Community of interest and joint control.
Parties are not engaged in a joint adventure within the meaning of the law of negligence unless there is a community of interest in the purpose of the under *503 taking, and equal authority or right to direct and govern the movements and conduct of each other in connection therewith. Rae v. Cameron, supra; Darman v. Zilch, 56 R. I., 413, 186 A., 21, 110 A. L. R., 826 ; Moen v. Zurich General Accident Co., 3 Wash. (2d), 347, 101 P. (2d), 323; Bond v. O’Donnell, 205 Iowa, 902, 218 N. W., 898, 63 A. L. R., 901. In a joint adventure each adventurer is a principal with power of direction and control as to his coadventurers, and each of the other adventurers is his agent within the scope of the enterprise in which they are all engaged. 38 American Jurisprudence, 924, Section 237; Vrabel v. Acri, 156 Ohio St., 467, 103 N. E. (2d), 564, 30 A. L. R. (2d), 853.
Profit and loss.
An agreement for a división of the profits between the parties is also essential in a joint business adventure. A profit jointly sought in a single transaction by the parties thereto is the chief characteristic of a joint business adventure, and the profit accruing must be joint and not several. Fedderson v. Goode, 112 Colo., 38, 145 P. (2d), 981; Moon v. Ervin, 64 Idaho, 464, 133 P. (2d), 933; Commercial Lumber Co. v. Nelson, 181 Okla., 122, 72 P. (2d), 829; Brabazon v. Joannes Bros. Co., 231 Wis., 426, 286 N. W., 21. There must also be a sharing of losses as well as profits. Tidewater Construction Co. v. Monroe County, 107 Fla., 648, 146 So., 209; Rae v. Cameron, supra; Yeager v. Graham, 150 Kan., 411, 94 P. (2d), 317.
Distinction from partnership.
The distinction between joint adventure and partnership is that the former relates to a single transaction whereas the latter ordinarily relates to a continuing business. 30 American Jurisprudence, 679, Section 5; Union Savings & Loan Co. v. Cook, 127 Ohio St., 26, 33, 186 N. E., 728; Hathaway v. Porter Royalty Pool, Inc., supra.
*504 A joint business adventure, compositely defined, is an association of persons with intent, by way of contract, express or implied, to engage in and carry out a single business adventure for joint profit, for which purpose they combine their efforts, property, money, skill and knowledge, without creating a partnership, and agree that there shall be a community of interest among them as to the purpose of the undertaking, and that each coadventurer shall stand in the relation of principal, as well as agent, as to each of the other coadventurers, with an equal right of control of the means employed to carry 'out the common purpose of the adventure.
It must be observed that the liability of McCue, if any, is based upon his own conduct as operator of the Rohloff truck, whereas the liability of Rohloff, if any, must be of the vicarious type growing out of his relationship with McCue and based upon his responsibility for the conduct of McCue in the operation of the truck. It must also be observed, in this connection, that Rohloff was not a passenger in the truck at the time of the collision, and that liability of Rohloff can not be predicated upon any claim that McCue was the agent of Rohloff in the operation of the truck. In fact, the plaintiff does not predicate his cause of action against Rohloff on the basis of agency.'
The question is whether the facts make out the relationship of joint adventure as between McCue and Rohloff. The fact situation presents an enterprise with a two-fold objective. Rohloff was interested in preserving intact his bakery route for an interim— during his absence. McCue had no financial interest in preserving the route for Rohloff after the interim. As to that objective, there was no community of interest between the two defendants. It was a matter of concern to Rohloff alone.
The other objective was the keeping of the bakery *505 route in operation for the interim. For this purpose Rohloff contracted with McCue to operate the route. McCue took over the route for the interim, operated it as his own project, purchased his own goods, made his own sales, collected all moneys representing the sale price of the goods sold, and retained all the profits. Rohloff loaned his truck to McCue for that purpose, but received no rent for the use of the truck. Rohloff did not retain any control or supervision over the operations of McCue and there was no division of profits. If there had been losses during this interim by failure of customers to pay for goods purchased or otherwise, they would have been those of McCue. The contract was for an independent operation during the interim. In this project there were no community of interest, no joint control and no sharing of profits.
If McCue was the bailee of the truck, Rohloff did not become liable for its negligent operation. 6 American Jurisprudence, 410, Section 313; 7 Ohio Jurisprudence (2d), 122, Section 37; Nawrocki v. Cole, 41 Wash. (2d), 474, 249 P. (2d), 969, 35 A. L. R. (2d), 799. The owner of property in the hands of a bailee may recover from a third person for damages caused to such property by the negligence of such third person, even though the bailee is guilty of contributory negligence in the handling of the property. 7 Ohio Jurisprudence (2d), 122, Section 37.
The contract and operations under it in the instant case do not meet the tests of the relationship of joint adventure, and substantial evidence of the essential elements of joint adventure is necessary for the submission of the issue of the existence of that relationship to the jury. See Garrison v. Place, Admr., 92 Ohio App., 239, 109 N. E. (2d), 569.
The operation of the bakery route was an independent one. McCue was the bailee of the truck for use in his own business. These facts are made ap *506 parent by the application of some tests to the relationship of the parties. If McCue had negligently sold goods which contained poisonous ingredients,' could one harmed thereby have maintained an action against Rohloff? If McCue had made some unfortunate deal by which he created an indebtedness in the operation of the route while he was handling it, could the creditor maintain an action against McCue and Rohloff to recoup his loss? Obviously, the answers must be in the negative.
Having reached these conclusions, this court holds that the defendants were not engaged in a joint adventure and could not be joined as defendants in this action, and for that reason the trial court properly sustained the motion for a directed verdict in favor of Rohloff. Where the facts are undisputed, as in the instant case, the issue of the relationship of the defendants to each other is ordinarily one of law for the determination of the trial court. Bennett v. Sinclair Refining Co., 144 Ohio St., 139, 57 N. E. (2d), 776.
The issues of negligence on the part of McCue and contributory negligence as a matter of law on the part of plaintiff’s decedent were raised by the parties. The Court of Appeals in its opinion held that there was no evidence to support a finding that the decedent was guilty of contributory negligence as a matter of law,, whereas there was evidence to support an inference that McCue was negligent, and that such negligence proximately caused the collision and injury to the decedent. The Court of Appeals then assumed that the trial court directed a verdict on the ground that plaintiff failed to prove that decedent’s death was proximately caused by the collision, and found that the court erred in that respect.
Five weeks after interment, decedent’s body was exhumed, and an autopsy, consisting of an examination of the entire body, was performed by a physician *507 who alone testified on the subject of proximate cause. At the trial there was submitted to the physician a hypothetical question which was objected to by defendants’ counsel on the ground that the facts recited in the questions were not supported by evidence. The court sustained this objection and suggested that there should be answered first by the physician the question, “whether or not he has an opinion that injury or trauma caused this brain hemorrhage.” The physician then testified as follows:
“Q. Do you have an opinion as to whether or not injury or trauma caused the brain hemorrhage which led to death? A. Yes.
“Q. And what is that opinion, Doctor? * * * A. On the basis of the autopsy findings and on the basis of the history of an injury following for 17 hours with the presence of certain symptoms as — I am sorry; I am not supposed to consider the hypothetical question — I am sorry — I will say that on the basis of the fact that we found certain changes in the brain tissue and the evidence that I have here in my protocol that he has died some hours after, I believe that death and injury are closely allied together and I will say that it is very probable that death was due to a thrombosis, which is a clot in the blood vessel, and the thrombosis produced as it frequently does, a hemorrhage of the brain and the hemorrhage finally killed the individual.”
Upon cross-examination the physician testified:
“Q. And of course in this case you were unable to draw any conclusions whether he had been injured at any particular time ahead of his death? A. 1 didn’t describe any injuries.
( t # & #
“Q. You have talked to Mr. Peckinpaugh about this case before you appeared on the stand, have you not? A. Yes.
*508 ‘ ‘ Q. And you have not been given any other facts. concerning the accident in any other way, have you? A. I have been told the circumstances attending the death of the individual.
“Q. I say, aside from what you were told, and that was by Mr. Peckinpaugh? A. That’s right.
“Q. You have no other information as to how the accident happened? A. I do not.
‘ ‘ Q. Or as to what happened to the decedent before his death? A. I do not.”
The court on its own account then asked certain questions as follows :
“Q. Doctor, do I understand that you examined the head and skull of Mr. Blasingame on November 4th, and that you could find no evidence of injury or trauma? A. That is right.
“Q. I will ask you, doctor, if you had no previous history of Mr. Blasingame prior to the time that you performed the autopsy on November 4th, and no history at all of any trauma or injury prior to his death, would you then have an opinion as to the cause of death in this case? A. Yes, I should say that the cause of death was a brain hemorrhage.
“Q.- Due to what? A. I couldn’t say.
“Q. That is what I would like to ask you: does brain hemorrhage necessarily come from injury or trauma? A. Not necessarily.
“Q. Not necessarily? A. No.”
At the close of the physician’s testimony, counsel for defendants addressed the court as follows:
“I would like the record to show a motion to strike the entire testimony of the doctor, on the ground that no connection was shown with the automobile accident here in issue; that the doctor did not testify with reasonable medical certainty and that all his conclusions were entirely speculative, and I request the court to instruct the jury to disregard the doctor’s testimony.”
*509 The court answered: “Let the record show it is overruled. ’ ’
In view of the record, this court is of the opinion that the issue of proximate cause was not sustained. At the close of all the evidence counsel for the defendants moved for a directed verdict “for the reason that plaintiff’s evidence does not show a cause of action as to' either defendant; that as to the defendant Rohloff there is no proof whatever of joint enterprise or of negligence, or of any other elements of a cause of action, and that as to the defendant McCue there is no proof of negligence or proximate cause of all damages, and that the record further shows that the decedent was guilty of contributory negligence as a matter of law.” Whereupon the court directed a verdict for defendants.
This court is of the opinion that the direction of a verdict was justified as to Rohloff, on the ground that there was shown no joint enterprise or cause of action against him, and as to both Rohloff and McCue, on the ground that there was not sufficient evidence of proximate cause.
There was no. evidence that plaintiff’s decedent received any injury as the result of the collision of his car with the truck operated by McCue, or that any specific injury caused the cerebral hemorrhage which in turn caused decedent’s death.
The judgment of the Court of Appeals is reversed and that of the Common Pleas Court is affirmed.

Judgment reversed.

Weygandt, C. J., Matthias, Zimmerman and Stewart, JJ., concur.
Bell, J., concurs in paragraph three of the syllabus and in the judgment.
Taft, J., concurs in paragraphs one and two of the *510 syllabus and in the judgment so far as it relates to Rohloff.