WOZNIAK, Appellant, v. LOCAL 1111 OF THE UNITED ELECTRICAL, RADIO & MACHINE WORKERS OF AMERICA (UE) and others, Respondents.

*No. 113. Submitted under sec. (Rule) 251.54 March 1, 1973.— Decided March 27, 1973.*
(Also reported in 205 N. W. 2d 369.)

726

728

For the appellant the cause was submitted on the brief of *Martin E. Love* of Milwaukee.

For the respondents the cause was submitted on the brief of *Podell & Ugent* of Milwaukee.

HANLEY, J. Two issues are raised on this appeal.

1. Did the trial court abuse its discretion in ordering plaintiff to remit all but $1,000 of the jury's total award or face a new trial on all issues; and

2. Was it error for the trial court to deny defendants' motions for a directed verdict and judgment notwithstanding the verdict?

*Remittitur of verdict.*

In its written decision, the trial court reviewed the evidence in the record bearing on the question of both compensatory and punitive damages:

"As to the right of the plaintiff, under the evidence in this case, to be entitled to compensatory damages, this court is of the opinion that there is evidence to the effect that the plaintiff felt he was humiliated by the fact that his neighbors had received a leaflet from the defendants. While the relationship of the plaintiff with his neighbors prior and after the incident remained the same, nevertheless, this court is satisfied that the receiving of the leaflets by the neighbors from the defendants did give rise to a condition of mental anxiety on the part of the plaintiff. For this injury the plaintiff is entitled to reasonable compensation. It must be borne in mind that the circularization of the leaflet was limited to five neighbors. The evidence does not indicate any serious injury to his prior relationship with his neighbors, or loss of reputation or any economic loss. . . Taking into consideration all of the evidence as it bears upon the item of compensatory damages, it is the considered opinion of this court that $500.00 is a reasonable amount for the plaintiff's compensatory damages, and the jury award is reduced to such sum."

As to the jury's award of $20,000 for punitive damages, the court stated:

"Where the award is so disproportionate to the intended purpose of punitive damages, it becomes the duty of the trial court to reduce such excessive punitive damages to a reasonable amount and give the plaintiff the option of accepting the same or having a new trial.

"The extent of the malice of the defendants, as appears from the evidence in this case, was not so severe as to justify an award of $20,000.00. . ."

Where, as here, the trial judge has made his own review of the record and has determined a jury's award to be excessive and has fixed a reduced amount therefor, giving the plaintiff a new trial on the issue of damages unless he should exercise his option to take the amount thought by the court to be reasonable, this court will reverse only where it finds an abuse of discretion by the trial court. *Lucas v. State Farm Mut. Automobile Ins. Co.* (1962), 17 Wis. 2d 568, 571, 117 N. W. 2d 660. The test for whether the trial court has abused its discretion in finding a particular sum as a reasonable amount of damages is whether, if the trial court had been sitting as the sole fact finder and had fixed the plaintiff's damages in such amount, this court would still disturb such finding. *Boodry v. Byrne* (1964), 22 Wis. 2d 585, 126 N. W. 2d 503.

After a review of the record, we find that the trial court did not abuse its discretion in holding that a verdict awarding $5,000 compensatory and $20,000 punitive was excessive and, thereafter, remitting both to $500 each.

Although the law presumes harm as a normal consequence of libel because it is often so subtle and indirect as to defy monetary proof, it also provides for specific damages which result from the libelous publication. *Dalton v. Meister* (1971), 52 Wis. 2d 173, 179, 188 N. W. 2d 494. Here, plaintiff was unable to provide proof of any specific damages which were caused by the circulation of the leaflet. Similarly, although the leaflet was sent to only five of his neighbors, at least several

of them testified to the fact that plaintiff's prior reputation in their minds was less than high and others indicated that they didn't know him that well. The trial court evidently considered these factors when it reduced the verdict for compensatory damages.

Although the jury found that the defendants had acted with malice, the punitive damages should be proportionate with compensatory damages and since they "are assessed for punishment only," it is relevant to consider the maximum fine in the Wisconsin Criminal Code governing similar offenses. *Meke v. Nicol* (1973), 56 Wis. 2d 654, 664, 203 N. W. 2d 129. The maximum fine for defamation under sec. 942.01, Stats., is $1,000.

The defendants are unable to point to any errors which took place entitling them to a new trial nor can they show any specific factors indicating that the jury was motivated by passion and prejudice.

It is the contention of defendants that there has been no abuse of discretion by the trial court in remitting the verdict as to both compensatory and punitive damages. We think the defendants are correct.

*Defendants' motions before and after verdict.*

Defendants' only contention on their appeal from the order of the trial court denying both their motions for directed verdict and judgment notwithstanding the verdict is the same one which was before this court in their earlier appeal from the denial of their motion for summary judgment, namely, that the leaflet upon which this entire action was based was true as a matter of law. Their contention rests upon the argument ". . . that while the term 'scab' has many meanings,[2] it was

---

[2] Webster's, *New International Dictionary* (2d ed.):

"3. *Opprobrious* a. *Slang.* A dirty, paltry fellow; a scoundrel. b. *Trade-Unionism.* A workman who works for lower wages than, or under conditions contrary to, those prescribed by the trade-union; also, one who takes the place of a workman on a strike. . . ."

here employed in the context of a labor dispute and must be read in such a context." *Wozniak v. Local 1111 of UE, supra,* at pages 591, 592.

In affirming the action of the trial court in denying defendants' motion for summary judgment, this court stated:

". . . It is the function of the court to determine in the first instance whether a communication published in the form of libel or slander is capable of a defamatory meaning. [citations omitted]

"Thus the trial court in denying the motion for summary judgment fulfilled this function when it held that the letters sent to the plaintiff's neighbors were capable of a defamatory meaning." *Wozniak, supra,* at page 591.

Once the trial court has correctly ruled that the allegedly libelous

". . . communication is capable of an innocent meaning as well as a defamatory meaning, it is then for the jury to determine whether the communication capable of a defamatory meaning was so understood by its recipient." *Martin v. Outboard Marine Corp.* (1962), 15 Wis. 2d 452, 462, 113 N. W. 2d 135.

In the case of *Zillmer v. Miglautsch* (1967), 35 Wis. 2d 691, 151 N. W. 2d 741, this court stated:

---

Funk & Wagnalls, *New Standard Dictionary of the English Language:*
"5. A workman who does not belong to or will not join or act with a labor-union; one who takes the place of a striker; a strike-breaker; rat."

Webster's, *Collegiate Dictionary* (5th ed.) :
"2. slang. A dirty paltry fellow; a scoundrel. 3. A workman who works for lower wages than, or under conditions contrary to, those prescribed by the trade-union; also, one who takes the place of a striker."

Black's, *Law Dictionary* (4th ed.) :
"A working man who works for lower wages than or under conditions contrary to those prescribed by a trade union; also one who takes the place of a workingman on a strike. . . ."

"[a] case should be taken from the jury and a verdict directed against a party:

" ' " . . . only when the evidence gives rise to no dispute as to the material issues or only when the evidence is so clear and convincing as reasonably to permit unbiased and impartial minds to come to but one conclusion." ' *Anderson v. Joint School Dist.* (1964), 24 Wis. (2d) 580, 583, 129 N. W. (2d) 545, 130 N. W. (2d) 105, citing *Smith v. Pabst* (1940), 233 Wis. 489, 288 N. W. 780, and *Rusch Sentinel-News Co.* (1933), 212 Wis. 530, 533, 250 N. W. 405.

"Also:

" 'A verdict ought to be directed if, taking into consideration all the facts and circumstances as they appear in evidence, there is but one inference or conclusion that can be reached by a reasonable man.' *Milwaukee v. Bichel,* ante, p. 66, 150 N. W. (2d) 419."

A motion for judgment notwithstanding the verdict which the trial court also denied in this case brings to bear the same essential determination on the part of a trial judge.

"A motion notwithstanding the verdict amounts to a post-verdict motion for a directed verdict. . . It is, in a sense, a demurrer to the evidence. It admits the facts found but contends that as a matter of law those facts are insufficient, though admitted, to constitute a cause of action." *State v. Escobedo* (1969), 44 Wis. 2d 85, 90, 91, 170 N. W. 2d 709.

Here the trial court ruled that it could not as a matter of law rule that the term "scab" could give rise to but one general meaning; namely, an individual who does not choose to participate in a labor strike which has been called. We think this was a correct ruling.

The term "scab" must be examined in its relationship to the whole leaflet, and to determine whether the potentially defamatory term was understood by its recipients in its defamatory sense. ". . . the surrounding circumstances under which . . . [it] was published

must be taken into consideration." *Martin v. Outboard Marine Corp., supra,* at page 463.

The leaflet which was distributed to plaintiff's neighbors talks of how the "Allen-Bradley workers were forced . . ." to strike because of "unfair" labor demands made on them. It follows with the thought that the company rather than negotiate a settlement ". . . has decided to try running scabs through the picket line, to break the strike . . . ." From this context, the jury could have inferred that recipients of the communication could have understood that an individual—though a "worker" himself—who did not join in a cause which in the long run would benefit him and his family but who instead chose to "prolong it" was a "scoundrel" who should be shunned by his neighbors. That the jury could have drawn such an inference is clear from the testimony of one of plaintiff's neighbors, Jane Werner, who said a "scab" was "a man that goes through the picket line against his fellow employees to break a plant that is on strike."

The question of whether the leaflet communicated to its recipients the idea that plaintiff was a "scoundrel" or merely the truth—that is to say, a man who chose not to participate in a strike which was his right to do—was a question which was properly a matter for the jury and this court will not upset its finding.

Defendants' final contention that sec. 103.53, Stats., concerning the publication of facts in a labor dispute permits them to mail this type of leaflet to a man's neighbors in hopes that they will subtly coerce him into joining a strike is without any merit.

The order of the trial court is modified so as to grant the option for a new trial only as to the issue of damages.

*By the Court.*—Order modified and, as modified, affirmed.

ROBERT W. HANSEN, J. *(concurring).* For reasons stated in the dissenting opinion in *Dalton v. Meister*

(1971), 52 Wis. 2d 173, 184–197, 188 N. W. 2d 494, the writer would strike any award for "punitive" damages, finding such additional privately collected fine or penalty particularly inappropriate in this type of action.