MARYLAND CASUALTY COMPANY, Appellant, v. PENN-SYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY, Respondent.

No. 75–509. Submitted on briefs November 2, 1977.—Decided December 13, 1977.
(Also reported in 260 N.W.2d 380.)

250

For the appellant the cause was submitted on the briefs of *Brian E. Butler,* and *Stafford, Rosenbaum, Rieser & Hansen* of Madison.

For the respondent the cause was submitted on the brief of *Ward I. Richter,* and *Bell, Blake & Metzner, S.C.* of Madison.

HANLEY, J. The principal issue of this case is whether the trial court erred in granting defendants' motion for judgment notwithstanding the verdict.

*Propriety of the Motion for Judgment Notwithstanding the Verdict*

The defendants' motion for judgment notwithstanding the verdict was granted by order for judgment dated October 30, 1975. The function of the motion was therefore controlled by that case law preceding the effective date of the new post-verdict motion statute, sec. 805.14 (5)(b), Stats. (1975). Sec. 801.01(3), Stats. (1975). The function and proper use of this motion was summarized by this court in *Herro v. Dept. of Natural Resources*, 67 Wis.2d 407, 413–14, 277 N.W.2d 456 (1975), where it stated:

"A motion for judgment notwithstanding the verdict admits for the purposes of the motion that the findings of the verdict are true, but asserts that judgment should be granted the moving party on grounds other than those decided by the jury. *Hennington v. Valuch* (1965), 27 Wis.2d 130, 133 N.W.2d 824; *Shumway v. Milwaukee Athletic Club* (1945), 247 Wis. 393, 20 N.W.2d 123; *Volland v. McGee* (1941), 236 Wis. 358, 294 N.W. 497, 295 N.W. 635. *The motion does not raise the issue as to whether there is sufficient evidence to support the verdict and the application may not be granted on the ground that the verdict is against the great weight of the evidence.* State v. Escobedo (1969), 44 Wis.2d 85, 90, 91, 170 N.W.2d 709. While not challenging the sufficiency of the evidence to support the facts found in the verdict, *it may be used to challenge whether the facts found in the verdict are sufficient to permit recovery.* Wozniak v. Local 1111 of UE (1973), 57 Wis.2d 725, 205 N.W.2d 369; *State v. Escobedo, supra,* page 90. The purpose of the motion is to avoid a new trial and to secure a final judgment in favor of the movant. *State v. Escobedo, supra,* page 91. It is generally held that

judgment notwithstanding the verdict is not the proper remedy where there are defects in the evidence which can be remedied by a new trial. *Thus it is said that neither the admissibility of evidence nor its sufficiency may be challenged by the motion.* 46 Am. Jur.2d, *Judgments,* p. 391, sec. 117; 49 C.J.S., *Judgments,* p. 165, sec. 60." (Emphasis supplied.)

In the instant case, the jury returned the following verdict:

"Question #1: Just prior to the time and place of the fire, was Charles Hall negligent with respect to his own safety?

"Answer: Yes. Dissenting [None].

"Question #2: If your answer to Question #1 is 'Yes,' then answer this question: Was such negligence on the part of Charles Hall, as you have found in your answer to Question #1, a cause of the loss sustained in the fire?

"Answer: Yes. Dissenting [None].

"Question #3: If you have answered Question #2 'Yes,' then answer this question: At the time and place of the fire, was the Skyway Motel negligent?

"Answer: No. Dissenting [None].

". . .

"Question #6: If you have answered Question #2 'Yes,' then answer this question: At the time and place of the fire, was Charles Hall acting within the scope of his employment as a salesman for his employer, Lussky, White & Coolidge, Inc.?

"Answer: Yes. Dissenting [None]."

Assuming for the purposes of this motion that the above findings of the jury are true, the principal question on this appeal is whether there are other grounds or facts which entitle the defendant to judgment notwithstanding the verdict.

In its decision on the defendants' post-verdict motions, the trial court concluded that Maryland had failed to

meet the requisite burden of proving to a reasonable certainty by a fair preponderance of the evidence the fact that the fire originated from smoking materials— the only origin of the fire for which Penn National would be liable. Therefore, it is necessary to determine whether the evidence, as a whole, was as a matter of law insufficient to constitute a basis for recovery. *Wozniak v. Local 1111 of U.E.*, 57 Wis.2d 725, 733, 205 N.W.2d 369 (1973).

This action was tried to the jury as a *res ipsa loquitur* case, and the jury was instructed, in part, as follows:

"Now, it is the law in Wisconsin that the mere occurrence of a fire does not give rise to a presumption, or even a permissible inference, of negligence. It is also the law in Wisconsin that a person dying in an occurrence is presumed to have exercised due care for his own safety. This presumption prevails and you must find for the defendants unless you find the plaintiff has established what the conduct of the deceased actually was and the plaintiff has established as a fact that the deceased was negligent just prior to the fire here involved.

"You are further instructed that if you find that Mr. Hall, the deceased, had exclusive control of the instrumentality, whatever that was, which started the fire in question, and if you further find that the fire is of a type or kind that ordinarily would not have occurred had Mr. Hall exercised ordinary care, then you may infer from the occurrence of the fire itself and the surrounding circumstances that there was negligence on the part of Mr. Hall, unless the defendants have offered you an explanation of the fire which is satisfactory to you."

The jury was also given the standard instructions concerning the plaintiff's burden of proof, the credibility of witnesses and the weight to be given the opinions of expert witnesses.

The granting of the *res ipsa loquitur* instruction was based upon the following facts in evidence. Charles M.

Hall was a travelling fabric salesman who was employed by Lussky. His wife testified that he had smoked regularly for 20 years prior to September, 1971, when he first quit. On Saturday, November 13, 1971, Hall took a room at the Skyway Motel. At that time Donald Blake, the motel's clerk, observed that Hall's eyes were puffy, his face was reddish and his clothes disheveled. The witness stated that Hall "was either overly tired or had been drinking."

After checking in, Hall left the motel and went to the Spit and Whistle tavern in Prairie du Chien. He arrived there at about 11:15 p.m. and the tavern's proprietress, Helen Dilley, testified that Hall consumed three "mixed shots." She also testified that Hall smoked filter-tipped cigarettes and, when he finished his last, bought a new pack at a vending machine at the tavern. Hall left the tavern at about 12:30 a.m.

At 10:00 a.m. the next morning, Donald Blake discovered the fire in Hall's room. Seeing smoke coming out from underneath the door and windows, Blake shut off the electrical power to the room and kicked down the door. The door was locked from the inside. Smoke prevented his entry into the room but the local fire department soon arrived and extinguished the fire.

The county coroner, Donald Sime, arrived at the scene within 25 minutes of the fire's discovery. Sime looked through the room for Hall's effects, and examined Hall's automobile. There he found approximately 45 cigarette butts in the automobile's ashtray.

Frank P. Roberts, the Deputy State Fire Marshall, was asked to investigate the fire. He conducted an investigation of the scene with several firemen and Donald Blake. Roberts testified that he examined the electrical outlets in the room and concluded that they were not the cause of the fire. He also observed that there was a heavy coat of smoke throughout the room and that

the finish of the furniture in the room was not blistered. He concluded from this that the fire did not reach a very high temperature.

The bed had been situated in the room so that its headboard fronted the south wall of the room. To the east of the bed was a nightstand on which a table lamp was placed. This lamp was plugged into an electrical outlet on the wall behind and below the headboard. Roberts testified that the headboard had been heavily burned. He testified that it had burned through from the side towards the wall, but that it had not burned in an upward direction. From this, Roberts concluded that the fire was a slow burning fire. He also concluded that the fire had started in the southeast corner of the bed because the mattress springs in that area had sagged from the heat, indicating that this part of the bed had been subject to high temperature for the longest period of time. He also noted that there was unburned cloth still clinging to the edges of the box springs in this area, indicating that the fire had burned from top to bottom.

Roberts concluded that the fire was started by smoking cigarettes in bed. He based this conclusion on the physical evidence of the fire; that Hall's right arm had been badly burned; that the fire had burned from the front of the headboard to the back; and that the fire had burned from the top of the mattress to the bottom.

The trial court concluded that it had erred in admitting Robert's opinion as to the origin because the opinion was without factual foundation and, as a consequence, further concluded that the *res ipsa loquitur* instruction was improper. For these reasons, the court granted the defendants' motion for judgment notwithstanding the verdict.

### Admissibility of Opinion as to Fire's Origin

The trial court criticized the opinion of Deputy State Fire Marshall Roberts concerning the origin of the fire

for the reason that the witness had eliminated the possibility that the fire had been started by a table lamp on a nightstand only because of the testimony of Donald Blake. Blake had testified earlier that the body of this lamp was still intact after the fire and that the fabric of the lampshade had burned away. Blake further testified: "The light bulb was either still intact or the light bulb was broken and all the glass was lying directly underneath the lamp in the corner." He also testified that he noticed no bulb glass in the vicinity of the bed.

After a review of the evidence, we are satisfied that the trial court erred in holding Roberts' opinion inadmissible. Roberts' testimony shows that he systematically eliminated possible locations of the origin of the fire by an analysis of the fire damage. He testified that the condition of the room after the fire negated the possibility that the fire originated with the electrical wiring behind the walls or with the electrical outlets themselves. He further negated the possibility that the fire originated in the television set which was found at the foot of the bed on the basis of the undisputed fact that Hall's upper extremities, rather than his lower, were most severely burned. He concluded that the fire originated on the bed on the basis of his personal observation that the box springs were most severely damaged at the head of the bed, that the headboard burned through from the side facing the bed to the side facing the wall, and that fabric was found still attached to the edges and bottom of the box springs.

As to the cause of the fire, Roberts concluded that the probable cause of the fire was smoking materials coming in contact with the bedclothes. This conclusion was based in part on the same personal observations of the fire damage which led him to conclude as to the location of the fire's origin. But it was also based upon

the more general analysis of the damage done by the fire: that the damage resulted from a slow burning and low heat fire principally confined to the bed area. He negated the possibility that the fire originated within the walls or within the television set on the basis of direct observation. He negated the possibility that the fire was caused by the table lamp—which had been located on the bedside nightstand—coming into contact with the bedclothes on the basis of his observation of photographs admitted into evidence and on the basis of Mr. Blake's testimony that this lamp was found in a corner of the room away from the bed. While the trial court questioned Mr. Blake's testimony because of his uncertainty as to whether the lamp's bulb was broken or intact, Mr. Blake was unequivocal as to where he found the lamp and indicated its position after the fire on a schematic drawing as being in the corner of the room separated from the bed by the nightstand.

We are satisfied that the expert witness testimony of Roberts was based upon his own observations, and upon facts which were either undisputed or within his personal knowledge. Sec. 907.03, Stats., permits an expert to base an opinion upon evidence perceived by or made known to him at or before trial. At the time of trial, Roberts had 24 years of experience in the field of fire fighting and investigation, and in the last 14 years preceding trial, he estimated that he investigated up to 1400 fires. Although it may sometimes be difficult to precisely determine the cause of a fire which totally destroys the area of its occurrence, when the fire is relatively confined as the one in the instant case, it is no doubt possible to analyze the damage and remaining evidence to eliminate possible causes of the fire and to arrive at a probable cause. *See, Bituminous Casualty*

*Corp. v. United Military Supply,* 69 Wis.2d 426, 432–33,
230 N.W.2d 764 (1975).

*Applicability of Res Ipsa Loquitur*
The trial court concluded that without Roberts' opin-
ion as to the cause of the fire, and because of the plain-
tiff's failure to eliminate other possible causes of the
fire, the *res ipsa loquitur* instruction should not have
been given. The first reason for the trial court's con-
clusion is removed by this court's ruling that Roberts'
opinion was admissible. There remains for review the
trial court's second reason.

In Wisconsin, the following conditions must be present
before the doctrine of *res ipsa loquitur* is applicable: (1)
the event in question must be of a kind which does not
ordinarily occur in the absence of negligence; and (2)
the agency or instrumentality causing the harm must
have been within exclusive control of the defendant.
When these two conditions are present, they give rise
to a permissible inference of negligence which the jury
is free to accept or reject. *Utica Mutual Insurance Co.
v. Ripon Cooperative,* 50 Wis.2d 431, 436, 184 N.W.2d 65
(1971); *Weggeman v. Seven-Up Bottling Co.,* 5 Wis.2d
503, 509, 93 N.W.2d 467 (1958).

The respondent first argues that because the plaintiff
failed to negate all possible causes of the fire, the *res
ipsa loquitur* instruction which permitted the jury to in-
fer negligence in Hall's use of smoking materials was
improper. The respondent cites *Arledge v. Scherer
Freight Lines, Inc.,* 269 Wis. 142, 68 N.W.2d 821 (1955)
and *Implement Dealers Mutual Fire Insurance Co. v.
Golden,* 257 Wis. 532, 44 N.W.2d 264 (1950) to support
this argument. In *Arledge v. Scherer Freight Lines,
Inc., supra* at 150, this court observed that the mere oc-

currence of a fire does not necessarily suggest that it was caused by negligence. In *Implement Dealers Mutual Fire Insurance Co. v. Golden, supra* at 534, this court concluded that a fire which originated at the time and place where the defendant's employees were chiseling out portions of a wall to find a gas leak was not an event which normally does not occur without negligence.

These cases indicate the difficulty which, under certain factual situations, attends the application of the inference of negligence to circumstantial evidence. It has been said that to apply the rule of *res ipsa loquitur* to a particular case, there must be evidence from which reasonable men might conclude that it was more likely that the event was caused by negligence than not. W. Prosser, *Handbook of the Law of Torts,* §39 at 211 (4th ed., 1971). Generally, this requires the plaintiff to establish that the occurrence causing the loss was precipitated by an event within the control of the defendant. However, the plaintiff need not conclusively eliminate all other possible causes of the occurrence.

"The plaintiff is not required to eliminate with certainty all other possible causes or inferences, which would mean that he must prove a civil case beyond a reasonable doubt. All that is needed is evidence from which reasonable men can say that on the whole it is more likely that there was negligence associated with the cause of the event than that there was not. It is enough that the court cannot say that the jury could not reasonably come to that conclusion. Where no such balance of probabilities in favor of negligence can reasonably be found, res ipsa loquitur does not apply." W. Prosser, *Handbook of the Law of Torts,* §39 at 218 (4th ed., 1971).

The difficulty in applying *res ipsa loquitur* to this case was due to the fact that the trial court felt that the

plaintiff had not introduced sufficient evidence to negate the possibility that the fire was started by a defective table lamp. There was testimony that fires originating from smoking materials and fires originating from an electrical source such as a lamp burn at low temperatures and result in damage similar to that caused by the fire in this instance. However, we think the trial court imposed too great a burden on the plaintiff in this case. Where other causes are in the first instance equally probable as the one propounded by the plaintiff, there must be evidence which will permit a jury to eliminate them. This evidence need not be conclusive; that which permits a finding as to the greater probability is enough. *Weggeman v. Seven-Up Bottling Co., supra* at 514; W. Prosser, *Handbook on the Law of Torts,* §39 at 218–19 (4th ed., 1971).

A review of the record indicates that there was sufficient evidence in this case to permit the jury to find that there was a greater probability that the fire was caused by the negligent use of smoking materials. The fact that no smoking materials were found in the room after the fire does not as a matter of law prohibit the jury from reaching this conclusion because, as several witnesses testified, smoking materials in the nature of filter cigarettes and matches near the fire's origin might well have been reduced to imperceptible ashes by a fire of this intensity. Also, testimony and photographic evidence that the fire originated on the top of the bed would permit the jury to conclude that the fire was not caused by a table lamp found some distance from the bed or by the lamp's cord which ran below and behind the bed.

Respondent makes a final argument that *res ipsa loquitur* is inapplicable under any circumstances to fire cases. This argument is premised upon the frequently cited requirement for the application of the doctrine: that the evidence as to the true explanation of the event

must be more readily accessible to the defendant than to the plaintiff. The respondent argues that this is a necessary prerequisite to the application of *res ipsa loquitur* because it manifests the doctrine's purpose of permitting a jury to infer negligence when evidence of specific negligence is not available to the plaintiff but is available to the defendant. Because, the respondent argues, fires typically destroy all evidence of negligence, it would violate the purpose of the doctrine to apply *res ispa loquitur* in such cases.

This argument cannot be accepted, for as this court stated in *Freitag v. Montello*, 36 Wis.2d 409, 419, 153 N.W.2d 505 (1967), "We do not deem this principle of accessibility of the evidence to be indispensable or controlling requirement for the invoking of *res ipsa*."

Because the expert witness' opinion as to the cause of the fire was admissible, and because the evidence as a whole was sufficient to permit the jury to find that the probable source of the fire was smoking materials, a *res ipsa loquitur* instruction was appropriate in this case. Therefore, we conclude that the trial court was in error in granting defendants' motion for judgment notwithstanding the verdict.

*By the Court.*—Judgment reversed and cause remanded with directions to reinstate the verdict and enter judgment upon the verdict as reinstated.